Rupa Nath Cook (SBN: 296130)
**NATH COOK LAW PC**
100 Pine St, Ste 1250
San Francisco, CA 94111-5235
Tel: 714-335-2266
Email: rupa@nathcook.com

*Attorney for Plaintiff Luc Troussieux*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUC TROUSSIEUX, an individual, | Case No.: |
| Plaintiff | **COMPLAINT FOR:** |
| vs. | 1. **CONVERSION** |
| | 2. **FRAUD** |
| | 3. **NEGLIGENT MISREPRESENTATION** |
| JONATHAN SEGALI, an individual; GOOD WORKS DRONE SHOWS LLC, a Nevada Limited Liability Company, | 4. **BREACH OF CONTRIBUTION AGREEMENT** |
| | 5. **BREACH OF OPERATING AGREEMENT** |
| Defendants. | 6. **BREACH OF FIDUCIARY DUTY** |
| | 7. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | 8. **UNJUST ENRICHMENT** |
| | 9. **COMMON COUNTS** |
| | 10. **FAILURE TO PROVIDE ACCESS TO BOOKS AND RECORDS (STATUTORY)** |
| | 11. **ACCOUNTING** |

-1-

COMPLAINT

Plaintiff Luc Troussieux ("Plaintiff"), by and through his counsel of record, file this Complaint against Defendants Jonathan Segali and Good Works Drone Shows LLC (collectively, "Defendants"), as follows:

## I.   NATURE OF CASE

1.    This action arises from a fraudulent investment scheme perpetrated by Defendants against Plaintiff. In late 2024, Defendant Jonathan Segali ("Segali"), acting through his alter-ego company, Defendant Good Works Drone Shows LLC ("Good Works" or the "Company"), induced Plaintiff to invest $750,000 in Good Works through a series of material misrepresentations and omissions. While representing the investment as a legitimate business opportunity and assuring Plaintiff that the funds would be used to purchase essential business equipment and capitalize the new venture, on information and belief, Segali had no intention of capitalizing the business and ultimately converted Plaintiff's investment for personal use.

2.    Defendants' fraudulent scheme came to light when Defendants failed to deliver on their promises. For instance, despite Plaintiff's significant investment in the Company for the specific purpose of purchasing drones, Plaintiff observed that Good Works was using rented drones for all of its shows. In May 2025, Good Works inexplicably failed to show up for a contracted drone show for Plaintiff's unrelated business, Bright Business Media, LLC ("Bright Business"). Plaintiff subsequently learned that Defendants had attempted to contract with another drone show company for this show, indicating that Good Works still owned no drones and/or that Good Works was suffering from operational and management issues. Tellingly, when Plaintiff - a 10% member of the Company - requested answers and financial records, Defendants evaded the requests and refused (and still refuse) to provide any of the requested information.

3.    On information and belief, Defendants have squandered nearly a million dollars in cash and Segali has grossly mismanaged the Company to the ground - all within a few months of

COMPLAINT

its inception. Plaintiff has no purview into the status or affairs of a business he partially owns and invested significant sums into, and is likely left with nothing but a worthless minority stake in an insolvent company. Accordingly, Plaintiff brings this action to hold Defendants accountable for their fraud, breaches of contract, breaches of fiduciary duty, and other violations of law, and seeks an accounting to determine the true extent of his damages.

## II.    THE PARTIES

4.    Plaintiff Luc Troussieux is an individual and resident of the State of California.

5.    Defendant Jonathan Segali is an individual. Upon information and belief, at all relevant times, Segali was a resident of the State of Nevada. Segali is the managing member of Good Works, owning 90% of the interests in Good Works, and is also the agent for service of process for Good Works.

6.    Good Works Drone Shows LLC is a limited liability company organized under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada, and doing business nationwide, including in California.

## III.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff, who is a resident of California, and Defendants, who are citizens of Nevada, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.    This Court has personal jurisdiction over Defendants because Defendants have established sufficient minimum contacts with California such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Defendants purposefully directed their activities at California by, among other things, inducing a California resident to invest significant funds and enter into a contribution agreement and an operating agreement;

**COMPLAINT**

receiving economic benefit through Plaintiff's $750,000 capital contribution, which was transmitted from California; and committing intentional torts, including fraud, misrepresentation, and conversion, that were expressly aimed at Plaintiff in California and from which the harm was individually felt by Plaintiff in this State. At all relevant times, Defendants also maintained business relationships with other California-based clients and partners in connection with the Company's operations, regularly transacted and conducted business within California (and, specifically, within the Northern District of California), and entered contracts with California choice of law provisions. The claims asserted herein arise out of and relate to Defendants' contacts with California.

9.     The exercise of personal jurisdiction over Defendants is reasonable and does not offend traditional notions of fair play and substantial justice given Defendants' purposeful contacts with California, California's interest in protecting its residents from fraudulent conduct, and the lack of burden on Defendants who voluntarily established contacts with California.

10.     Venue is proper in this District under the provisions of 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and harms giving rise to the claims occurred in this judicial district. Plaintiff resides in this District, and it is where Defendants' fraudulent misrepresentations were received and relied upon, where the subject contracts were signed, and where the resulting economic and other injuries were suffered by Plaintiffs.

## IV.     DIVISIONAL ASSIGNMENT

11.     Because a substantial portion of the events or omissions that give rise to Plaintiff's claims occurred in Marin County, this case should be assigned to the San Francisco or Oakland Divisions of this Court.

## V.     GENERAL ALLEGATIONS

12.     Bright Business is a leading meetings industry publisher, hosting luxury networking events on a global scale, publishing meetings content in print and digital magazines,

producing webinars and podcasts, and offering a variety of other digital resources. Plaintiff is the managing member of Bright Business.

13.    From approximately 2022 - 2024, Plaintiff, on behalf of Bright Business, utilized the services of a third-party drone show company ("Third-Party Drone Company") to provide photography and videography services for Bright Business's live events. Plaintiff enjoyed a positive relationship with this Third-Party Drone Company and would even refer it to other companies. It was through this Third-Party Drone Company that Plaintiff became acquainted with Segali, who, upon information and belief, was then employed by or otherwise a representative of the Third-Party Drone Company.

14.    In or around September or October of 2024, Segali informed Plaintiff that he was going to start his own drone business, Good Works Drone Shows LLC. Shortly thereafter, Segali actively solicited Plaintiff, while Plaintiff was in California, to invest in Good Works in order to help capitalize the Company and so that the Company could purchase necessary equipment.

15.    Segali assured Plaintiff that his investment would be used solely for legitimate business purposes associated with the Company. More specifically, in or around the fall of 2024, Segali represented to Plaintiff that his investment would be used to repurchase drone equipment that Segali sold in November of 2024 to an individual in Texas, and that Segali was also going to purchase a truck and trailer to assist in operating the business. Segali and Plaintiff's conversations about Plaintiff's investment in the Company largely occurred while Plaintiff was in California (over phone, text messages, emails, and a few in-person encounters).

16.    Relying on Segali's representations and assurances, Plaintiff agreed to invest $750,000 (the "Capital Contribution") in exchange for a ten percent (10%) membership interest in the Company. Plaintiff's investment was memorialized in a Contribution Agreement (the "Contribution Agreement") signed by Segali on behalf of Good Works on December 27, 2024 and by Plaintiff in California on December 30, 2024, a true and correct copy of which is attached

hereto as <u>Exhibit 1</u>. The Contribution Agreement explicitly restricted use of Plaintiff's Capital Contribution "for capitalization of the Company, including the Company's operational expenses, investment, working capital, equipment."

17.    Between December 2024 and April 2025, Plaintiff transferred a total of $750,000 to Good Works in exchange for a 10% membership interest in the company.

18.    Through his signing of the Contribution Agreement, Plaintiff, along with the other members of the Company (including Segali), became subject to the Company's operating agreement (the "Operating Agreement") referenced therein. Among other duties and responsibilities, the Operating Agreement provided that Segali, as manager of the Company, has "a fiduciary duty of loyalty and care similar to that of managers of business corporations organized under the laws of Nevada." The Operating Agreement further provides that all financial records "will be held at the Company's primary business address and will be accessible to all Members." In addition, the Operating Agreement imposes on the Board of Managers of the Company the duty to "[m]aintain its own books, records, accounts, financial statements…" and to "[n]ot commingle its assets with assets of the Members or any other person, and separately identify, maintain, and segregate all Company assets. The Operating Agreement also requires the Company to "Maintain an arm's length relationship with the Members."

19.    In early 2025, Plaintiff, on behalf of Bright Business, contracted with Good Works to perform drone shows for Bright Business's events on the following dates: February 9, 2025, March 9, 2025, May 18, 2025, August 3, 2025, September 3, 2025, September 11, 2025, October 26, 2025. The events would be held at various locations, including in: San Diego, California; Santa Fe, New Mexico; Atlantic City, New Jersey; Nassau, Bahamas; Orlando, Florida; Tampa, Florida; and Napa, California. In exchange for its performance, Bright Business would pay Good Works $8,000 per show or $64,000 total. Bright Business paid Good Works a $32,000 deposit for these shows up front. The parties' drone show agreement contained a choice

of law provision requiring all disputes to be governed under California law with jurisdiction in Ventura County, California.

20.     On February 9, 2025, Good Works did a drone show for Bright Business in San Diego, California. Good Works did another drone show for Bright Business on March 9, 2025 in Santa Fe, New Mexico. Good Works also did a show in San Francisco's Chinatown for Chinese New Year in or about February 2025 for another company. On information and belief, Good Works rented drones to perform these shows and had not yet purchased its own drones as promised.

21.     Plaintiff attended at least one of these events wherein he met Segali and discussed the status and prospects of Good Works. Segali represented to Plaintiff that the Company was doing well, had purchased equipment, and was booking events. Plaintiff asked Segali to keep him updated about the status of the Company and to share financials. Segali agreed to do so.

22.     Having received no updates from Segali through the rest of March and April, Plaintiff reached out to Segali in April 2025 and asked for an update on the Company and requested Company financials. Though Segali acknowledged Plaintiff's request, he did not provide Plaintiff with any of the requested information.

23.     Good Works was scheduled to perform a drone show at Bright Business's event on Monday, May 19, 2025 in Atlantic City, New Jersey. Up until the date of the event, Segali and Good Works indicated that they would attend and perform their obligations. However, on the morning of the event, no one from the Company, including Segali, showed up. When Plaintiff called Segali to inquire about his whereabouts, Segali stated that he had engaged another drone company, LunaLite Drone Show Tech ("LunaLite"), to perform the services on Good Works's behalf.

24.     Plaintiff immediately reached out to LunaLite, but was informed that LunaLite would not be able to perform in Good Works's place. LunaLite explained: "We were asked by

**COMPLAINT**

Good Works on Friday afternoon to pull off the almost impossible by designing and programming a show in less than 72 hrs. A process that requires at atleast [sic] 3 weeks prior to the event. To try and support the situation, we gave it a shot with the team staying up through the night through Sunday and found that there are not enough human hours to complete the programming and not being able to test prior for safety considerations. I notified [Segali] that it is next to impossible to execute the drone show."

25.     Defendants' failure to appear and perform the drone show at Bright Business's event on May 19, 2025 and attempt to engage another drone company in the eleventh hour was a glaring indication to Plaintiff that something was wrong. Plaintiff became increasingly concerned that if Good Works was failing to fulfill its obligations to Bright Business, then it may be doing the same to other customers and prospects. In addition, based on Defendants' attempted engagement of another drone company for the May 19th event, as well as Good Works' renting of drones for the January and February events, Plaintiff grew suspicious that Good Works had not purchased any drones or other equipment.

26.     Plaintiff began to inquire and subsequently learned that Segali had a history of financial and legal issues in his past business dealings, leading Plaintiff to further suspect that Segali had used Plaintiff's investment in the Company for his own personal benefit.

27.     After the May 19, 2025 event, Plaintiff again requested information from Segali regarding the Company's operations, contractual commitments, and proof of drone purchases. Despite Plaintiff's repeated requests, Segali failed to provide the requested information and instead engaged in evasive behavior, offering vague or inconsistent responses that effectively prevented Plaintiff from obtaining any details about the Company, Plaintiff's investment, and the Company's operations.

28.     On or around May 29, 2025, Plaintiff exercised his rights as a 10% member of the Company and formally demanded information concerning the Company's business and affairs. A

true and correct copy of Plaintiff's written request is attached hereto as <u>Exhibit 2</u>. Plaintiff sent the demand letter by text, email, Federal Express, and certified U.S. Mail. In response to Plaintiff's text sending the demand letter with the message "Any questions?," Segali confirmed receipt and responded: "Not at all will get it over."

29.     However, Defendants did not respond to the demand letter and did not provide - and, to date, have not provided - Plaintiff with **any** of the requested information, leaving Plaintiff with no choice but to initiate this legal action.

## VI.     <u>ALTER EGO ALLEGATIONS</u>

30.     On information and belief, Good Works is the alter ego of Segali, and there exists such a unity of interest and ownership between Segali and Good Works that their separate personalities no longer exist. Adherence to the fiction of a separate corporate existence would, under the circumstances, sanction a fraud and promote injustice against Plaintiff.

31.     <u>Sole and Dominating Control</u>: At all relevant times, Segali was the managing member and exercised sole and dominating control over Good Works. He made all material decisions for the Company, often without regard for the interests of the Company or its other members and treated the Company's business as his own.

32.     <u>Commingling of Funds and Assets</u>: On information and belief, Segali failed to maintain a distinction between his personal assets and the assets of Good Works. On information and belief, he commingled Company funds with his own and used the $750,000 Capital Contribution from Plaintiff for his own personal benefit rather than for the contractually-required purpose of capitalizing the Company and purchasing equipment. This conduct is in direct violation of the Operating Agreement, which explicitly forbids commingling assets and requires the Company to pay its own liabilities from its own funds.

33.     <u>Disregard of Corporate Formalities</u>: Segali has systematically disregarded the corporate formalities required by the Operating Agreement and applicable law. He has failed to

maintain proper books and records, refused to provide financial statements or Company information to Plaintiff upon repeated requests, and has not observed the formal requirements of operating a limited liability company. This violates the Operating Agreement, which mandates that records be maintained and accessible to all members.

34.  <u>Inadequate Capitalization</u>: On information and belief, Good Works was inadequately capitalized from its inception, or was rendered so by Segali's misappropriation of Plaintiff's Capital Contribution. The Company rented drones for its initial shows, indicating it did not possess the fundamental assets necessary for its business, which Plaintiff's $750,000 Capital Contribution was intended to purchase.

35.  <u>Use of the LLC to Perpetrate Fraud</u>: Segali used Good Works as an instrument to perpetrate fraud. He made false representations to induce Plaintiff's investment, promising the funds would be used for equipment, while intending to convert the funds for his personal use. Upholding the corporate shield would allow Segali to escape liability for his fraudulent conduct.

36.  For these reasons, the corporate veil of Good Works should be pierced, and Segali should be held personally liable for the debts and obligations of Good Works owed to Plaintiff.

## VII.  <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION
### CONVERSION
### (Against All Defendants)

37.  Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

38.  Plaintiff entrusted Defendants with $750,000, a specific identifiable sum of money, for the specific and limited purpose of capitalizing Good Works and purchasing equipment therefor.

39.     On information and belief, Good Works, acting at the direction and control of Segali, wrongfully converted all or a substantial portion of these funds for Segali's personal use, inconsistent with the purpose of the investment.

40.     Plaintiff did not consent to Segali's personal use of the funds.

41.     As a direct result of Defendants' conversion, Plaintiff has been damaged in an amount not less than $750,000.

42.     Defendants' conversion was willful, wanton, and/or malicious, warranting an award of punitive damages.

### SECOND CAUSE OF ACTION
### FRAUD
### (Against All Defendants)

43.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

44.     Segali, acting on behalf and as the alter ego of Good Works, represented to Plaintiff that his $750,000 Capital Contribution would be used to purchase specific assets for Good Works and that the Company was doing well.

45.     On information and belief, Defendants intentionally made false representations on material facts, or intentionally omitted material facts to Plaintiff related to Plaintiff's investment and membership interest in the Company. On information and belief, the Company never purchased the drones or other equipment and the Company was not in fact doing well.

46.     Defendants knew these representations were false and that material facts were omitted when made.

47.     Defendants made these representations and omissions to induce Plaintiff's investment in the Company through April 2025 and to otherwise induce Plaintiff's reliance on the representations and omissions.

**COMPLAINT**

48.     These representations and omissions were material to Plaintiff's decision to invest and Plaintiff justifiably relied on these representations. Plaintiff would not have invested the funds or agreed to a minority ownership stake had he known the representations were untrue.

49.     As a direct result of Defendants' fraud, Plaintiff has been damaged in an amount not less than $750,000.

50.     Defendants' fraud was willful, wanton, and/or malicious, warranting an award of punitive damages.

## THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

51.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

52.     Segali, acting on behalf and as the alter ego of Good Works, falsely represented that Plaintiff's investment would be used for Good Work's legitimate business purposes, including the purchase of equipment for the Company, and that the Company was doing well.

53.     Defendants had no reasonable grounds for believing these representations to be true and failed to exercise reasonable care in communicating them.

54.     Defendants made these representations and omissions to induce Plaintiff's investment in the Company through April 2025 and to otherwise induce Plaintiff's reliance on the representations.

55.     These representations were material to Plaintiff's decision to invest and Plaintiff justifiably relied on these representations. Plaintiff would not have invested the funds had he known the representations were untrue.

56.     As a direct result, Plaintiff suffered damages of not less than $750,000.

57.     Defendants' actions were willful, wanton, and/or malicious, warranting an award of punitive damages.

**COMPLAINT**

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRIBUTION AGREEMENT**
**(Against All Defendants)**

58.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

59.    The Contribution Agreement is a valid and binding contract. Plaintiff and Good Works are parties to the Contribution Agreement, which was executed by Segali on behalf of and as an alter ego of Good Works.

60.    Plaintiff has performed all of his obligations under the Contribution Agreement.

61.    Good Works, acting through Segali, breached the Contribution Agreement by failing to use Plaintiff's $750,000 Capital Contribution for its contractually-mandated purpose, which was expressly limited to the "capitalization of the Company, including the Company's operational expenses, investment, working capital, equipment." On information and belief, the funds were instead converted for Segali's personal use.

62.    As a direct and proximate result of Defendants' breach of the Contribution Agreement, Plaintiff has been damaged in an amount to be proven at trial, including the loss of his $750,000 investment.

**FIFTH CAUSE OF ACTION**
**BREACH OF OPERATING AGREEMENT**
**(Against Segali)**

63.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

64.    The Operating Agreement is a valid and binding contract. Plaintiff and Segali are parties to the Operating Agreement.

**COMPLAINT**

65.     Plaintiff has performed all of his obligations under the Operating Agreement.

66.     Segali breached the Operating Agreement by, among other things:

a.   Failing to adhere to his fiduciary duties of loyalty and care as required by Section 8(a);

b.   On information and belief, commingling Company assets with his own, in violation of Section 6(g)(iv);

c.   On information and belief, using Company funds to pay for personal liabilities, in violation of Section 6(g)(v); and

d.   Failing to maintain the Company's books and records and make them accessible to all Members, in violation of Section 4(b) and Section 6(g)(i).

67.     As a direct and proximate result of Segali's breach of the Operating Agreement, Plaintiff has been damaged in an amount to be proven at trial, including the loss of his $750,000 investment.

68.     Plaintiff also requests an order compelling Defendants to provide full access to the books and records sought by Plaintiffs as required without further demand under the Operating Agreement, an award of attorney's fees and expenses and costs of suit, and such other relief deemed necessary and appropriate by the Court.

**SIXTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Against Segali)**

69.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

70.     As the manager of Good Works, Segali owed fiduciary duties of loyalty and care to the Company and its members, including Plaintiff, as specified in the Company's Operating Agreement and as provided by applicable law.

**COMPLAINT**

71.     Segali breached his fiduciary duties by, on information and belief, misrepresenting the use of Plaintiff's $750,000 Capital Contribution, failing to use the funds for legitimate business purposes, self-dealing against the interests of the Company, mismanaging the Company and its assets, failing to provide Company financials to a member upon request, and otherwise harming the Company.

72.     As a direct result of Segali's breach, Plaintiff has been damaged in an amount to be proven at trial, including the loss of his $750,000 investment.

**SEVENTH CAUSE OF ACTION**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against All Defendants)**

73.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

74.     The Contribution Agreement and Operating Agreement contained an implied covenant of good faith and fair dealing, requiring Defendants not to frustrate Plaintiffs' rights to receive the benefits of the agreements.

75.     Nevada Revised Statute (NRS) Section 86.298 also provides that the duties of a manager or managing member of a limited liability company to the company, to any member or to another person that is a party to or otherwise bound by the operating agreement includes the implied contractual covenant of good faith and fair dealing.

76.     Defendants breached this covenant by failing to use Plaintiff's investment as promised, mismanaging the Company, and refusing to provide information about the Company's financial status and operations.

77.     As a direct result, Plaintiff has been damaged in an amount to be proven at trial.

///

///

///

-15-

**COMPLAINT**

**EIGHTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

78.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

79.     Plaintiff conferred a significant financial benefit upon Defendants, including the $750,000 Capital Contribution.

80.     Defendants accepted and retained the benefit conferred by Plaintiff.

81.     Defendants were unjustly enriched by receiving Plaintiff's $750,000 Capital Contribution for capital and equipment that, on information and belief, were never effectuated or purchased.

82.     It is inequitable for Defendants to retain these benefits without compensating Plaintiff.

83.     Plaintiff is entitled to restitution from Defendants for the benefits unjustly conferred.

**NINTH CAUSE OF ACTION**
**COMMON COUNTS**
**(Against All Defendants)**

84.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

85.     Defendants became indebted to Plaintiff when they obtained money from Plaintiff in the amount of $750,000 for the Capital Contribution.

86.     This money was paid by Plaintiff for a specific purpose which Defendants failed to satisfy, and which in equity and good conscience should be returned to Plaintiff.

87.     Defendants have been unjustly enriched by their retention of these funds.

88.     No part of this sum has been paid and the entire amount is due and owing.

**COMPLAINT**

89.     As a direct result, Plaintiff has been damaged in an amount to be proven at trial, but not less than $750,000.

## TENTH CAUSE OF ACTION
## FAILURE TO PROVIDE ACCESS TO BOOKS AND RECORDS (STATUTORY)
### (Against All Defendants)

90.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

91.     Plaintiff is a member of Defendant Good Works, a Nevada limited liability company.

92.     Pursuant to Nevada Revised Statutes (NRS) 86.241(2) and (3), as a member of the Company, Plaintiff is entitled to obtain, upon reasonable demand and for any purpose reasonably related to his interest as a member: (a) True and complete records regarding the activities and financial condition of the Company; (b) Promptly after becoming available, a copy of the Company's federal, state, and local income tax returns for each year; (c) True and complete records regarding the amount of cash and description of property or services contributed by each member; and (d) Other records regarding the affairs of the Company as is just and reasonable under the circumstances.

93.     Despite numerous requests by Plaintiff, Defendants have not provided Plaintiff with any financial information or other information regarding the affairs of Good Works since becoming a member in December 2024.

94.     On May 29, 2025, Plaintiff requested the Company's records pursuant to NRS 86.241(2) in writing. Plaintiff sent the letter to Segali who is the managing member of the Company as well as its agent for service of process.

95.     Despite Plaintiff's written demand, Defendants have failed and refused, and continue to fail and refuse, to provide an accounting of its financial records, even after demand by Plaintiff, in violation of their legal and fiduciary obligations.

COMPLAINT

96.     Plaintiff requests an order compelling Defendants to provide immediate and full access to the books and records sought by Plaintiff as required without further demand under NRS Section 86.241(2) and (3), an award of attorney's fees and expenses and costs of suit, and such other relief deemed necessary and appropriate by the Court.

**ELEVENTH CAUSE OF ACTION**
**ACCOUNTING**
**(Against All Defendants)**

97.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

98.     A fiduciary relationship exists between Plaintiff and Defendants. As the manager of Good Works, Segali owes a fiduciary duty of loyalty and care to the Company and to Plaintiff as a member. Good Works, as the entity in which Plaintiff invested and holds a membership interest, is likewise obligated to account for the funds it received and holds.

99.     The financial accounts of Good Works are exclusively within the possession and control of Defendants. On information and belief, Defendants have commingled Company funds with Segali's personal funds, failed to maintain proper financial records, and misappropriated Plaintiff's Capital Contribution.

100.     The amount of money that has been wrongfully diverted, commingled, or wasted by Defendants is unknown to Plaintiff and cannot be ascertained without a formal accounting.

101.     Plaintiff has demanded that Defendants provide access to the Company's books and records to allow for an accounting, but Defendants have failed and refused to do so.

102.     Plaintiff has no adequate remedy at law because the amount of damages cannot be determined without an accounting of the Company's finances and the disposition of Plaintiff's Capital Contribution.

103.    Plaintiff is therefore entitled to an accounting from Defendants to determine the full amount of money and assets received, the dispositions thereof, and the amount to which Plaintiff is entitled in damages.

### VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief against both Defendants and order on all causes of actions as follows:

1. For compensatory, general, and special damages against all Defendants in an amount according to the proof at the time of trial;

2. For an order compelling Defendants to promptly and fully produce the books and records requested by Plaintiffs, as mandated by NRS § 86.241(2) and (3);

3. For punitive and exemplary damages, where applicable;

4. For pre-judgment and post-judgment interest as allowed by law;

5. For all attorneys' fees and costs of suit incurred herein; and

6. Such other and further relief as the Court may deem just and proper.

DATED: July 14, 2025                             NATH COOK LAW P.C.


                                                  /s/ Rupa Nath Cook
                                                 Rupa Nath Cook,
                                                 Attorney for Plaintiff
                                                 Luc Troussieux

**COMPLAINT**

# EXHIBIT 1

## CONTRIBUTION AGREEMENT

This Contribution Agreement (the "Agreement") is entered into as of 11/29/2024, by and between:

**Luc Troussieux**, an individual/entity with a principal address at 1720 Grand Ave  San Rafael CA 94901 ("Contributor"),

**Good Works Drone Shows LLC**, a Limited Liability Company organized under the laws of Nevada, with its principal place of business at 2747 Paradise Rd unit 1602 Las Vegas Nevada 89109 ("Company").

## RECITALS

WHEREAS, the Contributor desires to contribute capital to the Company in exchange for an equity interest in the Company; and

WHEREAS, the Company desires to accept such contribution and issue equity in exchange for such contribution on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

## 1. Contribution of Capital

1.1 **Contribution**: The Contributor agrees to contribute the sum of Seven Hundred and Fifty Thousand Dollars (**$750,000**) (the "Capital Contribution") to the Company in cash, payable to the Company's designated account at the Closing (as defined in Section 4 below)

1.2 **Use of Contribution**: The Capital Contribution will be used for capitalization of the Company, including the Company's operational expenses, investment, working capital, equipment.

## 2. Issuance of Equity

2.1 **Equity Interest**: In exchange for the Capital Contribution, at the Closing, the Company agrees to issue to the Contributor ten percent (10%) of the membership interests in the Company (the "Equity Interest"), free of encumbrances. The Equity Interest shall be duly-authorized and validly-issued. The Equity Interest shall be subject to the terms of the Company's Operating Agreement, as amended from time to time.

2.2 **Notice of Intended Disposition**

The owner of the purchased shares must notify the corporation in writing of the terms of a third-party offer.

2.3 **Exercise of the First Refusal Right**

The corporation has a specified time period to repurchase the shares on the same terms as the third-party offer. The Contributor will also have first right of refusal of new shares being sold

3. Closing

3.1 Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement shall take place as of November __, 2024 (the "Closing") and shall be evidenced by each party's signature on this Agreement.

3.2 At the Closing:

   a. Contributor shall deliver to the Company the following:

   i. Contributor's cash contribution to the Company pursuant to Section 1.1, in immediately available funds; and

   ii. Contributor's signature on the signature page of this Agreement.

   b. The Company shall deliver to Contributor the following:

   i. The fully executed Operating Agreement of the Company, showing the issuance of the Equity Interests to the Contributor, or the Company's member ledger, giving effect to the issuance of the Equity Interests;

   ii. A certificate of good standing (or its equivalent) for the Company from the Secretary of State or similar governmental authority of the jurisdiction under the laws in which the Company is organized; and

   iii. The signature of Company's authorized representative on the signature page of this Agreement

4. **Rights and Obligations of the Contributor**

**4**.1 **Rights**: As a member of the Company, the Contributor will have the following rights, subject to the terms of the Operating Agreement:

- The right to participate in the profits and losses of the Company.

- The right to vote in accordance with the Operating Agreement.

- The right to receive distributions in accordance with the Operating Agreement.

4.2 **Obligations**: The Contributor agrees to comply with the provisions of the Operating Agreement and any applicable laws or regulations governing the Company's operations.

## 5. **Company's Representations and Warranties**

The Company represents and warrants to the Contributor that:

5.1 **Authority**: The Company has full authority to enter into this Agreement and issue the Equity Interest as set forth herein.

5.2 **No Conflicts**: The execution and performance of this Agreement does not violate or conflict with any agreement, law, or regulation to which the Company is subject.

5.3 Organization: The Company is duly organized, validly existing, and in good standing under the laws of the state in which it is incorporated and does business.

5.4 Compliance: The Company is materially in compliance with all laws applicable to the conduct of its business as currently conducted.

5.5 Legal Actions: There are no legal or other similar actions pending or, to the Company's knowledge, threatened against or by the Company that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such action.

6. Further Assurances

6.1 Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder.

## 7. **Miscellaneous**

**7.1 Expenses**: Except as otherwise provided in this Agreement, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be borne by the party incurring such costs and expenses. The parties acknowledge that there will be no broker's commission, finder fee or similar fee payable in connection with this Agreement and the transactions contemplated hereby.

**7.2 Survival**: All representations and warranties contained herein and all other rights that by their nature are intended to survive shall survive the Closing.

**7**.3 **Governing Law**: This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada.

7.4 **Amendments**: This Agreement may only be amended in writing, executed by both the Company and the Contributor.

7.5 **Entire Agreement**: This Agreement, together with the Operating Agreement of the Company, constitutes the entire agreement between the parties concerning the subject matter hereof.

7.6 **Severability**: If any provision of this Agreement is deemed invalid or unenforceable, the remainder of the Agreement will remain in full force and effect.

7.7 **Execution**: This Agreement may be executed in one or more counterparts, each of which will be deemed an original, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Contribution Agreement as of the date first written above.

**CONTRIBUTOR**:
Signature: _____
Name: Luc Troussieux,
Date: _____ 12/30/2024

**COMPANY**:
Good Works Drone Shows LLC.
By: *Jonathan Segali*_____
Name: Jonathan Segali
Title: President/CEO
Date: 12/27/2024_____

# EXHIBIT 2

May 28, 2025

**VIA CERTIFIED MAIL (RETURN RECEIPT REQUESTED)**
**AND EMAIL**

Jonathan Segali
Good Works Drone Shows LLC
2747 Paradise Rd., #1602
Las Vegas, NV  89109
jonathan@goodworks.show

**Re: Formal Demand for Financial Records of Good Works Drone Shows LLC**

Dear Jonathan:

I am writing as a member of Good Works Drone Shows LLC, a Nevada limited liability company, (the "Company") to formally request information related to the Company's activities and financial condition, including certain financial records of the Company, pursuant to Nevada Revised Statutes (NRS) 86.241.

**Basis for the Demand**

Pursuant to NRS 86.241(2), as a member of the Company, I am explicitly entitled to obtain, upon reasonable demand and for any purpose reasonably related to my interest as a member:

- True and complete records regarding the activities and financial condition of the Company;
- Promptly after becoming available, a copy of the Company's federal, state, and local income tax returns for each year;
- True and complete records regarding the amount of cash and description of property or services contributed by each member; and
- Other records regarding the affairs of the Company as is just and reasonable under the circumstances.

My demand is made in good faith and is reasonably related to my interest as a member of the Company - namely, to evaluate the Company's financial performance, and to investigate potential financial irregularities, breaches of fiduciary duty, and misappropriation of Company finances, specifically pertaining to my capital contribution of $750,000 made on November 29, 2024, which was invested for the Company's purchase of drones.

**Requested Records**

I hereby request access to and copies of the following records:

1. Complete financial statements of the Company, including balance sheets, income statements, and cash flow statements for: (a) the period ending December 31, 2024; and (b) the first quarter of 2025 (January 1, 2025 - April 30, 2025);
2. All bank statements and reconciliations for all Company accounts for (a) the period ending December 31, 2024; and (b) the first quarter of 2025 (January 1, 2025 - April 30, 2025);
3. Complete general ledger and journal entries for (a) the period ending December 31, 2024; and (b) the first quarter of 2025 (January 1, 2025 - April 30, 2025);
4. All 2024 Tax Returns filed by the Company;
5. Records of all distributions made to members for (a) the period ending December 31, 2024; and (b) the first quarter of 2025 (January 1, 2025 - April 30, 2025);
6. Documentation of all capital contributions made by members since the formation of the Company;
7. Records of all transactions between the Company and any member, manager, or affiliate for (a) the period ending December 31, 2024; and (b) the first quarter of 2025 (January 1, 2025 - April 30, 2025); and
8. Contact information for the Company's bookkeeper and accountant.

## Deadline for Compliance

I demand that you provide these records or make them available for inspection and copying no later than **June 9, 2025**. Please contact me at 415-966-9155 or luc@smartmeetings.com to arrange a mutually convenient time and place for this inspection, or to coordinate the delivery of copies.

If the records are not made available within a reasonable time after this demand, pursuant to NRS 86.241(5), I may serve a demand upon the Company's registered agent that the records be sent to me within ten (10) business days. If the Company wrongfully refuses me access to the requested records, pursuant to NRS 86.243, I may apply to the district court for an order to compel an inspection. The court may award reasonable costs and attorney's fees if it determines that the Company wrongfully refused the demand.

***

I sincerely hope that we can resolve this matter quickly and amicably. However, if I am not provided information to which I am entitled, I will not hesitate to pursue all available remedies, including, as necessary, court intervention.

I look forward to your prompt response and cooperation in this matter.

Sincerely,

Luc Troussieux,
Member,
Good Works Drone Shows LLC