Rupa Nath Cook (SBN: 296130)
Norman Xavier (SBN: 361995)
**NATH COOK LAW PC**
100 Pine St, Ste 1250
San Francisco, CA 94111-5235
Tel: 714-335-2266
Email: rupa@nathcook.com

*Attorney for Plaintiff Luc Troussieux*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUC TROUSSIEUX, an individual<br><br>Plaintiff<br><br>v.<br><br>JONATHAN SEGALI, an individual; GOOD WORKS DRONE SHOWS LLC, a Nevada Limited Liability Company,<br><br>Defendants. | Case No.: 25-CV-05939-JCS<br><br>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 17, 2025<br>Time: 9:30 a.m.<br>Dept: 9<br>Judge: Hon. Joseph C. Spero<br><br>*Complaint Filed: July 15, 2025* |

## NOTICE OF MOTION AND MOTION

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 17, 2025 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff LUC TROUSSIEUX ("Plaintiff" or "Mr. Troussieux") will and hereby does move for default judgment against Defendants JONATHAN SEGALI ("Segali"), and GOOD WORKS DRONE SHOWS, LLC ("Good Works" or the "Company") (collectively, "Defendants"), pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, for damages arising from claims stated in Plaintiff's complaint in this action (Dkt. No. 1) (the "Complaint").

In support of his Motion, and as further set forth in the accompanying memorandum of points and authorities, Plaintiff presents proof of the following:

1.     Plaintiff brought this action against Defendants on July 15, 2025.

2.     Defendants were served on the same date.

3.     Default was entered against Defendants on September 15, 2025.

4.     Defendants have not participated in this action following their defaults.

5.     Plaintiff is entitled to judgment against Defendants on account of the claims in Plaintiff's Complaint.

6.     The amount of judgment sought is $750,000 plus interest at the legal rate commencing on December 30, 2024, along with punitive damages, attorneys' fees and costs, and equitable relief to which Plaintiff is entitled under the causes of action alleged in the Complaint.

7.     Defendants are not infants, incompetents, in military service, or otherwise exempted from default judgment under the Servicemembers Civil Relief Act. Declaration of Luc Troussieux, ¶ 17.

This Motion is based upon the entry of defaults against Defendants, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Luc Troussieux and Rupa Nath Cook, Esq., all pleadings and papers on file in this action, and such other and further evidence and argument which may be presented at the hearing on this Motion.

Dated: November 8, 2025                                     NATH COOK LAW P.C.

                                                                    By: /s/ Rupa Nath Cook
                                                                         Rupa Nath Cook
                                                                         Norman Xavier
                                                                         Attorneys for Plaintiff Luc Troussieux

## <u>Table of Contents</u>

I.      INTRODUCTION.................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED...................................................... 1

III.    BACKGROUND ..................................................................................................... 2

IV.     PROCEDURAL HISTORY AND NOTICE ON DEFENDANTS ............................. 3

V.      ARGUMENT ......................................................................................................... 4

    A.  Legal Standard for Granting a Default Judgment ......................................... 4

    B.  The Court Has Jurisdiction to Grant Default Judgment ............................... 5

    C.  Defendants Were Properly Served ................................................................ 5

    D.  Each of the "Eitel" Factors Weighs in Favor of Default Judgment ............... 6

        1.  Eitel Factor No. 1 (Prejudice):................................................................. 6

        2.  Eitel Factor No. 2 (Substantive Merits of Plaintiff's Claims) and No. 3 (Sufficiency
        of Complaint): ......................................................................................... 6

        3.  Eitel Factor No. 4 (Amount of Money at Stake): .................................... 11

        4.  Eitel Factor No. 5 (Possibility of Dispute as to any Material Facts in the Case): . 12

        5.  Eitel Factor No. 6 (Whether Default Resulted from Excusable Neglect): ............. 12

        6.  Eitel Factor No. 7 (Strong Policy Underlying Federal Rules of Civil Procedure): 13

VI.     REQUESTED RELIEF ........................................................................................ 13

    A.  Compensatory Damages ................................................................................ 13

    B.  Pre-Judgment Interest ................................................................................... 14

    C.  Punitive Damages .......................................................................................... 14

    D.  Costs .............................................................................................................. 17

    E.  Attorneys' Fees .............................................................................................. 17

F.    Accounting ................................................................................................ 18

VII.    **CONCLUSION ....................................................................................... 18**

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT | CASE NO.: 25-CV-05939-JCS

# TABLE OF AUTHORITIES

**CASES**

*Alameda Cnty. Elec. Indus. Serv. Corp. v. Gatejen Consol. Indus., Inc.*, No. C-13-00241 JCS,

    2013 WL 4081310, at *12 (N.D. Cal. June 27, 2013) ............................................................ 13

*Anqin Wang v. California Inv. Immigr. Fund, LLC*, No. CV-17-08936-MWF,

    2018 WL 4740176 ................................................................................................................ 17

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)...................................... 11

*Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725, 727 (9th Cir. 2007).............................. 15

*Borman v. Brown*, 59 Cal. App. 5th 1048, 1060 (2021) ................................................................ 8

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010) ......... 4, 6, 13

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) ............................................................ 4

*Elder v. Pac. Bell Tel. Co.*, 205 Cal.App.4th 841, 857 (2012) .................................................... 10

*Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005)................................ 13

*Fair Housing of Marin v. Combs* (9th Cir. 2002) 285 F.3d 899, 906............................................ 12

*Hall v. Cole*, 412 U.S. 1, 5 (1973) .............................................................................................. 17

*Hrothgar Invs., Ltd. v. Houser*, No. 15-CV-01116-JCS, 2015 WL 5853634

    (N.D. Cal. Aug. 18, 2015)............................................................................................ 7, 14, 17

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945 ............................................................... 5

*Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638.................................................................... 7

*Marani v. Cramer,* No. 19-CV-05538-YGR (DMR), 2025 WL 2645901

    (N.D. Cal. Aug. 11, 2025),..................................................................................... passim

*Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 148 Cal.Rptr. 389, 582 P.2d 980, 990 (Cal. 1978).. 16

*Oasis W. Realty*, 51 Cal. 4th at 820 .............................................................................................. 9

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)................................................... 9

*Operating Eng'rs Loc. Union No. 3 v. Wilson*, 2019 WL 11254766 (N.D. Cal. Sept. 30, 2019) .. 7

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002) .............................. 13

*Philip Morris USA, Inc. v. Castworld, Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).... 14

*Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473
(9th Cir.1984) ..................................................................................................... 16, 17

*Schultz v. Harney* (1994) 27 Cal. App. 4th 1611, 1623 .............................................. 11

*Securities & Exchange Comm'n v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1166
(9th Cir. 2007).................................................................................................... 6

*Spencer v. Stafford*, No. 219CV01592RFBEJY, 2021 WL 765719 (D. Nev. Feb. 26, 2021)...... 17

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) .................................... 1

*Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019) ......................................... 6

*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 209 ........................................ 6, 7

**STATUTES**

28 USC §1332 (a)(1)............................................................................................ 5

Cal. Civ. Code § 1709............................................................................................ 14

Cal. Civ. Code § 3294............................................................................................ 15

Cal. Civ. Code § 3300............................................................................................ 14

Cal. Civ. Code § 3333............................................................................................ 14

Cal. Civ. Code § 3336............................................................................................ 14, 17

Cal. Civ.Code § 3336............................................................................................ 14

Cal. Civ. Code § 1655............................................................................................ 10

Cal. Corp. Code § 17704.09.................................................................................... 10

NRS § 86.391, *et. seq*............................................................................................ 10

NRS § 86.298........................................................................................................ 10

NRS § 42.005 ............................................................................................................ 15, 17

NRS § 86.241(2) and (3) ................................................................................................... 11

NRS § 86.243 .................................................................................................................... 11

NRS  § 86.298 .................................................................................................................... 10

**RULES**

Fed.R.Civ.P. 8(b)(6) ..................................................................................................... 5, 15

Fed.R.Civ.P. 54(d)(1) ........................................................................................................ 17

Fed. R. Civ. P. 55(a)-(b) ................................................................................................... 1, 4

**TREATISES**

*4 Witkin, Summary of California Law* (10th ed. 2023) § 508, at 543 ........................................... 11

**CONSTITUTIONAL PROVISIONS**

California Constitution Article XV, § 1 ................................................................................ 14

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT | CASE NO.: 25-CV-05939-JCS

## MEMORANDUM AND POINTS OF AUTHORITIES

### I.     INTRODUCTION

Plaintiff Luc Troussieux ("Plaintiff" or "Troussieux") initiated this action on July 15, 2025, to hold Defendants Jonathan Segali ("Segali") and Good Works Drone Shows, LLC ("Good Works" or the "Company") (collectively "Defendants") accountable for their fraud, conversion of funds, breaches of contract and fiduciary duty, and related misconduct. Dkt. No. 1.[1] Despite being properly served on the same day, Defendants have not appeared, answered, or otherwise defended this action as required by the Federal Rules of Civil Procedure. Accordingly, default was entered against Defendants on September 15, 2025. Dkt. No. 12.

Plaintiff is now entitled to default judgment against Defendants under Rule 55(b) of the Federal Rules of Civil Procedure in an amount not less than $750,000, plus interest at the legal rate commencing on December 30, 2024, along with punitive damages, attorneys' fees and costs, and an order for an accounting. The requested relief is particularly warranted here given that Plaintiff will have no other recourse for the harms committed by Defendants and because Segali has exacted similar fraudulent schemes against other individuals, entities, and even municipalities on a nationwide basis.

### II.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiff is entitled to a default judgment against Defendants.

2.     Whether Plaintiff is entitled to damages against Defendants, in the amount of $750,000, plus interest at the legal rate commencing on December 30, 2024, along with punitive damages and attorneys' fees and costs.

3.     Whether Plaintiff is entitled to equitable relief for an accounting.

---

[1] The Court must accept the facts alleged in the Complaint as true for purposes of this Motion for Default Judgment. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

### III.    BACKGROUND

This action arises from a fraudulent investment scheme perpetrated by Defendants against Plaintiff. In late 2024, Segali, acting individually and through his alter-ego company, Good Works, solicited Plaintiff to invest $750,000 in Good Works through a series of material misrepresentations and omissions. Dkt. No. 1 at ¶¶ 1, 14. Segali represented the investment as a legitimate business opportunity and assured Plaintiff that the funds would be used to capitalize Good Works and, specifically, to purchase essential business equipment such as drones. *Id*. at ¶ 1, 15. Relying on these representations, between December 2024 and April 2025, Plaintiff invested a total of $750,000 in the Company. Dkt. No. 1 at ¶¶ 16-17; Declaration of Luc Troussieux ("Troussieux Dec.") at ¶ 5.

Segali, however, had no intention of capitalizing the business as promised. Dkt. No. 1 at ¶ 1. Despite Plaintiff's substantial investment specifically earmarked for purchasing drones, Good Works was still using rented drones for all of its shows—demonstrating that it had not used Plaintiff's funds for the intended purpose and begging the question of what the funds had been used for instead. *Id*. at ¶¶ 2, 20. In May 2025, Good Works failed to appear for a drone show contracted by Plaintiff's unrelated business, Bright Business Media, LLC, without notice. *Id*. at ¶ 23.  Plaintiff later learned that, in addition to breaching its obligations under a contract, Defendants had attempted to subcontract the show to a third-party drone company at the last minute, indicating the Company still owned no drones and/or was having operational issues. *Id*.

Nonetheless, Segali continued to tout the success of the Company, represented that the Company had purchased equipment, and concealed any issues from Plaintiff, a member of the Company with 10% ownership of the Company. *Id*. at ¶ 21. When Plaintiff requested financial records and explanations, Defendants evaded all such requests and failed to provide any documentation—a further indication of Defendants' fraud and misconduct. *Id*. ¶¶ 22, 27-29.

On May 29, 2025, prior to filing the Complaint, Plaintiff sent Defendants a formal written demand for an accounting and information about the Company. Dkt. No. 1 at ¶ 28. Defendants acknowledged the demand, but did not substantively respond or provide Plaintiff with any of the requested information. *Id*. at ¶¶ 28-29.

It is now apparent that Defendants have squandered away nearly a million dollars and grossly mismanaged the Company within months of its formation. *Id*. at ¶ 3. Unfortunately, Plaintiff is not the only victim of Segali's fraud. Plaintiff has subsequently learned of Segali's fraud on a number of individuals, entities, and even municipalities, and that Segali was denied discharge in bankruptcy based on a stipulation essentially admitting to asset concealment and providing false information. Trousseaux Dec. at ¶¶ 11-13; Declaration of Rupa Nath Cook ("Cook Dec.") at ¶ 12-13; Request for Judicial Notice ("RJN") at Exhibits A-E; *see* Declaration of Jesse Asoau ("Asoau Dec.") ¶¶ 2-20. Importantly, as a direct result of Defendants' misconduct, the former personnel of Good Works have not been paid, creating yet another class of innocent victims in Defendants' fraud campaign. Trousseaux Dec. at ¶ 14; Asoau Dec. at ¶ 20.

## IV.    PROCEDURAL HISTORY AND NOTICE ON DEFENDANTS

On July 15, 2025, Plaintiff filed the Complaint in this action. Dkt. No. 1. As set forth in the Proofs of Service filed with the Court, both Defendants were served, "[b]y personally delivering copies." Dkt. Nos. 8 and 9; Declaration of Rupa Nath Cook ("Cook Dec.") at ¶¶ 2-3. Based on the date of service, Defendants were obligated to answer the Complaint by August 18, 2025. Cook Dec. at ¶ 4. Defendants did not timely file an answer or otherwise appear. *Id*.

On September 9, 2025, Plaintiff requested entry of default against Defendants. Dkt. No. 10. Plaintiff sent copies of the Request for Entry of Default to both Defendants via certified mail at the addresses where Defendants were initially served with the Complaint. Cook Dec. at ¶ 5. Both mailings were returned as undeliverable, and the U.S. Postal Service left a notice for

Defendants. *Id*. On September 15, 2025, Plaintiff's Request for Entry of Default was granted by the Clerk of the Court. Dkt. No. 12.

Plaintiff has made extensive efforts to compel Defendants to participate in this litigation. Despite these efforts, Defendants have failed to respond or otherwise participate in this action. *Id*. Plaintiff has sustained significant economic injury as a result of Defendant's wrongful actions, to the tune of at least $750,000. Troussieux Dec. at ¶ 16.

## V.     ARGUMENT

### A. Legal Standard for Granting a Default Judgment

A plaintiff may seek a default judgment in a lawsuit where the defendant fails "to plead or otherwise defend." Fed.R.Civ.P. 55(a)-(b). Before entering default judgment, a court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Marani v. Cramer,* No. 19-CV-05538-YGR (DMR), 2025 WL 2645901, at *4 (N.D. Cal. Aug. 11, 2025), citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Next, a court must assess whether the plaintiff effected proper service of process on the defendants. *Craigslist, Inc. v. Naturemarket, Inc*., 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).

If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, then it is instructed to consider the following factors: (1) the possibility of prejudice to Plaintiff if relief is denied; (2) the substantive merits of Plaintiff's claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of dispute as to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

In considering these factors, all factual allegations in Plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys.*, 826 F.2d at 917–18; *see also* Fed.R.Civ.P. 8(b)(6) (allegations not denied are deemed admitted).

## B.  The Court Has Jurisdiction to Grant Default Judgment

District courts have subject matter jurisdiction over civil matters where the amount in controversy exceeds the sum of $75,000 and is between citizens who are domiciled in different states. 28 USC §1332 (a)(1). The amount in controversy in this case is at least $750,000, which far exceeds the jurisdictional requirement. In addition, Plaintiff is an individual domiciled in the state of California, while Defendants Segali and Good Works are both domiciled in the state of Nevada. Dkt. No. 1 at ¶ 7. Accordingly, this Court has jurisdiction over this matter. *Id*.

This Court also has personal jurisdiction over Defendants. Although Defendants are domiciled outside the state, Plaintiff has alleged and demonstrated that Defendants regularly and systematically conducted business in California and, specifically, this District, including by booking and performing events in California and contracting with Plaintiff's California-based company, Bright Business Media, LLC, for services to be performed in California and with a governing law provision in California. Dkt. No. 1 at ¶¶ 7-10, 19-20; Troussieux Dec. at ¶ 2. Indeed, Defendants' solicitation efforts to Plaintiff, a California resident, largely occurred while Plaintiff was in California (over phone, text messages, emails, and a few in-person encounters). *Id*. at ¶¶ 14-16; Troussieux Dec. at ¶ 2. Accordingly, Defendants have "certain minimum contacts with [California] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## C.  Defendants Were Properly Served

The Complaint in this action was filed on July 15, 2025 and Defendants were served on the same day. Dkt Nos. 8 and 9. The sworn proof of service on file constitutes "prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Securities & Exchange Comm'n v. Internet Solutions for Business, Inc*., 509 F.3d 1161, 1166 (9th Cir. 2007). Thus, Defendants were properly served in this matter.

**D. Each of the "Eitel" Factors Weighs in Favor of Default Judgment**

    **1. Eitel Factor No. 1 (Prejudice):**

Under the first *Eitel* factor, default judgment is proper if Plaintiff will be prejudiced if relief is denied. *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). Here, Plaintiff will be prejudiced if default judgment is not entered because he has sustained significant economic injury because of Defendant's wrongful actions, including misappropriation of his $750,000 investment in the Company. *See* Troussieux Dec. at ¶ 16. Without default judgment, Plaintiff will be left without any other recourse for recovery. *Id.*

    **2. Eitel Factor No. 2 (Substantive Merits of Plaintiff's Claims) and No. 3 (Sufficiency of Complaint):**

Plaintiff properly alleges the elements of the causes of action contained in its well-pleaded Complaint, satisfying the second *Eitel* factor for default judgment:

**Conversion:** Under California law, conversion is the unauthorized taking and use of another's property. *See Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 209. "Notably absent from this formula is any element of wrongful intent or motive; in California, conversion is a strict liability tort." *Marami*, 2025 WL 2645901, at *9, citing *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019).

Here, Plaintiff entrusted Defendants with a specific, identifiable sum of money—$750,000 to be exact—to capitalize Good Works and purchase business equipment. *See* Dkt. No. 1 at ¶ 38. However, Good Works—at the direction of Segali—did not use the funds to purchase business equipment and instead diverted all or a substantial portion of the funds for Segali's personal benefit. *Id.* at ¶ 39. Defendants' conversion was complete by December 30, 2024, when it became clear that Defendants had no intention of using the funds for their stated purpose and had instead diverted them for personal use. Plaintiff did not consent to this use of the funds by Defendants and was damaged thereby. *Id.* at ¶¶ 40-41. The specific, identifiable nature of the $750,000 investment,

combined with Defendants' unauthorized use contrary to the express terms of the Contribution Agreement, establishes all elements of conversion under California law. *See Hrothgar Invs., Ltd. v. Houser*, No. 15-CV-01116-JCS, 2015 WL 5853634, at *8 (N.D. Cal. Aug. 18, 2015) (Spero, J.), report and recommendation adopted, 2015 WL 5747932 (N.D. Cal. Sept. 30, 2015) (finding a conversion claim sufficient where the plaintiff alleged a "readily ascertainable" amount of funds held on its account that the defendant failed to use for the intended purpose); *Operating Eng'rs Loc. Union No. 3 v. Wilson*, 2019 WL 11254766, at *9 (N.D. Cal. Sept. 30, 2019), citing *Welco*, 223 Cal. App. 4th at 209 ("Money may be the subject of an action for conversion if it involves 'a specific, identifiable sum.'").

**Fraud:** The elements of fraud under California law are: (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638. Plaintiff adequately alleges each of these elements against Defendants as follows:

The Complaint alleges that Segali, acting on behalf of and as the alter ego of Good Works, falsely represented that Plaintiff's capital contribution would be used to purchase specific business assets, including drones, and that the Company was doing well. Dkt. No. 1 at ¶¶ 21, 44. These representations were not true as Good Works never purchased the drones or equipment and was experiencing operational collapse, as seen by its use of rented drones, failure to perform drone shows under written contracts, and attempts to outsource drone show work to third-party competitors. *Id*. at ¶¶ 20, 23-26, 45–46. Defendants knew their representations were false or made them recklessly, without regard for their truth, as demonstrated by Defendants' refusal to provide Plaintiff with accounting and other basic information about the business and Plaintiff's investment and the fact that, unbeknownst to Plaintiff, Defendants were attempting to outsource the work to third-parties. *Id*. at ¶¶ 20, 22-29, 46.

Defendants made these false statements and concealed key facts with the intent to induce Plaintiff to invest in Good Works and to prevent Plaintiff from taking immediate action. *Id*. at ¶¶ 15-16, 21, 27, 47. Plaintiff reasonably and justifiably relied on these representations in deciding to invest $750,000 and not taking more immediate action. *Id*. at ¶¶ 16, 48. Plaintiff would not have made the investment had the facts been disclosed. *Id*. As a direct and proximate result of Defendants' fraud, Plaintiff suffered financial harm of at least $750,000. *Id*. at ¶¶ 49–50.

**Negligent Misrepresentation**: "The elements of a negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' [Citation.] Negligent misrepresentation does not require knowledge of falsity…." *Borman v. Brown*, 59 Cal. App. 5th 1048, 1060 (2021). The Complaint in this action adequately alleges all of the elements of negligent misrepresentation. Specifically, as noted above, Plaintiff alleges that Segali—acting on behalf of and as the alter ego of Good Works—repeatedly represented that Plaintiff's funds would be used for legitimate business purposes, including equipment purchases, and that the Company was performing well. Dkt. No. 1 at ¶¶ 15, 21, 52. Defendants lacked a reasonable basis for those representations and failed to exercise due care in making them, given that they were renting drones and attempting to subcontract work to competitors who had drones. *Id*. at ¶¶ 20, 23-25, 53. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered damages of not less than $750,000. *Id*. at ¶ 56.

**Breach of Contribution Agreement and Operating Agreement**: The elements of a cause of action for breach of contract are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff" *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Here, Plaintiff sufficiently alleges breaches by Defendants of two separate agreements.

First, Plaintiff and Good Works entered into a binding Contribution Agreement, a copy of which is attached to the Complaint. Dkt No. 1 at ¶ 59, Ex. 1. While Plaintiff performed all of his obligations, including contributing $750,000 to the Company, Defendants did not use the funds for "capitalization of the Company, including the Company's operational expenses, investment, working capital, equipment," as required by the contract, and instead diverted the funds for Segali's personal use. *Id*. at ¶¶ 60-61. Plaintiff has suffered damages as a result, including the loss of his $750,000 investment. *Id*. at ¶ 62.

Second, Plaintiff and Segali were parties to an Operating Agreement with respect to Good Works. *Id*. at ¶ 64. Plaintiff performed all obligations under the Agreement. *Id*. at ¶ 65. Segali violated the Agreement by commingling Company funds with his own, using Company assets for personal expenses, and failing to maintain or provide access to the Company's books and records as required. *Id*. at ¶ 66. The Complaint alleges that these acts breached Sections 4(b), 6(g)(i), 6(g)(iv), and 6(g)(v) of the Operating Agreement, which mandated proper recordkeeping, segregation of assets, and arm's-length conduct between members and the Company. *Id*. As a direct result of Segali's breaches, Plaintiff has suffered damages of at least $750,000. *Id*. at ¶ 67.

**Breach of Fiduciary Duty**: "The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." *Oasis W. Realty*, 51 Cal. 4th at 820. Segali, as manager of Good Works, owed a duty of loyalty and care under California and Nevada law, including the duties codified in California Corporations Code § 17704.09 and Nevada Revised Statutes (NRS) 86.391, *et. seq*. Dkt No. 1 at ¶ 70. These duties require Segali to act in the best interests of the Company and its members, avoid self-dealing, and refrain from using Company assets for personal gain. See, *e.g.*, Corp. Code § 17704.09; NRS 86.298. Segali breached these duties by intentionally misappropriating Plaintiff's $750,000 capital contribution for personal expenses, commingling Company funds with his own personal assets, concealing financial information, and refusing to provide access to the Company's books and

-9-

record, in violation of his statutory duties of loyalty and care. Dkt No. 1 at ¶ 71. As a direct and proximate result of Segali's breach, Plaintiff has suffered substantial damages, including the loss of his $750,000 investment. *Id*. at ¶ 72.

**Breach of Covenant of Good Faith and Fair Dealing**: The Contribution Agreement and Operating Agreement contained an implied covenant of good faith and fair dealing, which required Defendants not to frustrate Plaintiff's rights to receive the benefits of the agreements. *Id* at ¶¶ 74-75; *see* California Civil Code § 1655 (recognizing that every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement); NRS § 86.298 (noting that managers or managing members of a limited liability company owe a statutory duty to act in accordance with the implied contractual covenant of good faith and fair dealing). Defendants, however, breached this covenant by failing to use Plaintiff's investment as promised (and instead using the funds for Segali's own benefit), mismanaging the Company, and refusing to provide Plaintiff with financial information necessary to evaluate the status of the business. *Id* at ¶ 76. Plaintiff was harmed as a result thereof. *Id* at ¶ 77.

**Unjust Enrichment**: The elements of unjust enrichment are a "receipt of a benefit and unjust retention of the benefit at the expense of another." *Elder v. Pac. Bell Tel. C*o., 205 Cal.App.4th 841, 857 (2012). "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Marami*, 2025 WL 2645901, at *9, citing *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015). Plaintiff alleges that he conferred a significant financial benefit on Defendants through his $750,000 capital contribution. Dkt No. 1 at ¶ 79.  Defendants accepted and retained this benefit but failed to use the funds for capital and equipment as required and instead used them for Defendant Segali's personal use. *Id* at ¶¶ 80-81. Defendants were thus unjustly enriched by retaining the benefit of the funds without compensating Plaintiff.

**Common Counts**: A claim for common counts is based on: "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *4 Witkin, Summary of California Law* (10th ed. 2023) § 508, at 543; *see also Schultz v. Harney* (1994) 27 Cal. App. 4th 1611, 1623 (A cause of action for money had and received is stated if it is alleged the defendant "is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff."). Here, Plaintiff alleges that Defendants became indebted to him upon receiving $750,000 from Plaintiff as a capital contribution. Dkt No. 1 at ¶ 85. This money was provided for a specific purpose that Defendants failed to fulfill. *Id* at ¶ 86. No portion of the amount has been returned, and the entire sum remains due and owing. *Id* at ¶ 88. As a direct result, Plaintiff has suffered damages not less than $750,000. *Id* at ¶¶ 84–88.

**Failure to Provide Access to Books and Records; Accounting**: Plaintiff alleges that as a member of Defendant Good Works, a Nevada limited liability company, he is entitled under NRS 86.241(2) and (3) to access true and complete records of the Company's activities, financial condition, tax returns, member contributions, and other relevant records upon reasonable demand. *Id* at ¶ 92. Under NRS 86.243, if the LLC refuses to comply or fails to respond within 10 business days, as the Company has here, Plaintiff may seek a court order to compel production of the requested records. *Id*. at ¶¶ 90–96. Despite Plaintiff's written demand for these records, Defendants have failed and refused to provide any financial or operational information about Good Works since Plaintiff became a member in December 2024. *Id* at ¶ 95.

**3.    Eitel Factor No. 4 (Amount of Money at Stake):**

As set forth in the accompanying declaration of Plaintiff, Plaintiff seeks default judgment against Defendants Segali and Good Works for damages arising from Defendants' misconduct, including the loss of Plaintiff's capital contribution and related damages. Plaintiff requests judgment for $750,000—which represents Plaintiff's capital contribution provided to Defendants—plus interest thereon, costs, attorneys' fees, and punitive damages. This amount is

entirely proportional to Defendants' egregious misconduct here, including Defendant Segali's blatant conversion, fraud and deceit, and breaches of contract and fiduciary duty. Where, like here, "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Marani*, 2025 WL 2645901, at *10 (finding that while the amount sought ($6,355,974.71) was significant, it would be permitted under federal law).

### 4.    Eitel Factor No. 5 (Possibility of Dispute as to any Material Facts in the Case):

Since the Clerk of the Court entered default against Defendants on September 15, 2025, there can be no possibility of dispute as to any material facts in the case. *See Fair Housing of Marin v. Combs* (9th Cir. 2002) 285 F.3d 899, 906 (finding that once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true except as to the amount of damages). Accordingly, this factor favors default judgment against Defendants.

### 5.    Eitel Factor No. 6 (Whether Default Resulted from Excusable Neglect):

Defendants have had ample opportunity to participate in this action. Prior to filing his Complaint, Plaintiff served a demand letter to Defendants on May 28, 2025. Dkt. No. 1 at ¶¶ 28–29. Thereafter, Defendants were properly served with the Complaint on the same day it was filed, July 15, 2025. Dkt. Nos. 8 and 9. Finally, on September 10, 2025—prior to the Clerk's entry of default—Plaintiff sent copies of the Request for Entry of Default to all Defendants via certified mail to the address where they had previously been served. *See* Cook Dec. ¶ 5.

Despite these multiple notices and opportunities to respond, Defendants failed to answer, appear, or otherwise participate in this action. *Id.* The record clearly demonstrates that Defendants' default was not the result of excusable neglect. *See Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (finding the possibility of excusable neglect "remote" and granting default judgment given "dual instances of notice to the Defendant, as well as the extended period of time that has passed since entry of default by the clerk").

**6.  Eitel Factor No. 7 (Strong Policy Underlying Federal Rules of Civil Procedure):**

While public policy dictates that cases should be decided on their merits, Defendants'

failure to participate in this action has made it virtually impossible for the Court to render a

decision on the merits. "[W]here a defendant's failure to appear 'makes a decision on the merits

impracticable, if not impossible,' entry of default judgment is warranted." *Craigslist*, 694 F. Supp.

2d at 1061, citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002); *see*

*also Alameda Cnty. Elec. Indus. Serv. Corp. v. Gatejen Consol. Indus., Inc.*, No. C-13-00241 JCS,

2013 WL 4081310, at *12 (N.D. Cal. June 27, 2013) (Spero, J.), report and recommendation

adopted, 2013 WL 4156316 (N.D. Cal. Aug. 9, 2013) (finding the 7th Eitel factor met because a

decision on the merits was "not possible" as the defendant failed to appear). Accordingly, while

this factor alone is not dispositive, it supports default judgment against Defendants.

## VI.    REQUESTED RELIEF

In this Motion, Plaintiff seeks: (1) compensatory damages in the amount of $750,000; (2)

pre-judgment interest from December 30, 2024 in the amount of $71,730; (3) punitive damages in

the amount of $1,875,000; (4) costs of suit in the amount of $661.78; (5) attorneys' fees in the

amount of $41,520; and (6) equitable relief for an order compelling production of Good Works'

books, records, and financial documents. In determining these damages, "the court can rely on the

declarations submitted by the moving plaintiff." *Philip Morris USA, Inc. v. Castworld, Products,*

*Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### A.    Compensatory Damages

Plaintiff is entitled to compensatory damages under the majority of his causes of action.

*See* Cal. Civ. Code § 3300 (for contract claims); Cal. Civ. Code § 1709 (for deceit-based claims);

Cal. Civ. Code § 3333 (for breach of non-contractual obligations); *Marami*, 2025 WL 2645901, at

*9 (for unjust enrichment). For his compensatory damages, Plaintiff seeks to recover the specific,

identifiable sum of $750,000, representing the full amount of his capital contribution that was

converted by Defendants for Segali's personal use. This request for damages is clearly alleged in the Complaint and supported by Plaintiff's written declaration and corresponding evidence. *See* Dkt. No. 1 at ¶¶ 41, 49, 56, 62, 67, 72, 89, Troussieux Dec. at ¶ 5.

### B.    Pre-Judgment Interest

"Where damages have been awarded on a conversion claim, the plaintiff is also entitled to an award of prejudgment [interest]." *Hrothgar*, 2015 WL 5853634, at *9; *see also* Cal. Civ.Code § 3336 ("The detriment caused by the wrongful conversion of personal property is presumed to be . . . [t]he value of the property at the time of the conversion, with the interest from that time . . . and . . . fair compensation for the time and money properly expended in pursuit of the property"). Plaintiff is entitled to pre-judgment interest on the $750,000 from December 30, 2024—the date when Defendants' conversion was complete and damages became certain. *See* Dkt. No. 1 at p. 19.

The legal rate of interest in California is currently 10% per annum pursuant to California Constitution Article XV, § 1. From December 30, 2024, through the hearing date, pre-judgment interest totals approximately $71,730 (calculated at 10% annually for approximately 11.5 months), bringing the total compensatory award to approximately $821,730. Cook Dec. at ¶ 7.

### C.    Punitive Damages

The Court may award punitive damages in cases involving "oppression, fraud, or malice." Cal. Civ. Code § 3294; *see also* NRS 42.005 (providing for punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied"). Here, the Complaint sufficiently alleges that Defendants acted with oppression, fraud, and malice in effecting fraud and conversion on Plaintiff. *See, e.g.*, Dkt. No. 1 at ¶¶ 42, 50, 57.    For instance, the Complaint alleges that Defendants made material misrepresentations about using Plaintiff's $750,000 for legitimate business purposes while intending to convert it for personal use. *Id*. at ¶¶ 1, 35, 39, 61. Because Defendants knew these representations to be false when made, as noted above, their actions were willful. Similarly,

-14-

Defendants' systematic concealment of financial information and refusal to provide accounting records demonstrates despicable conduct carried on with willful disregard of Plaintiff's rights. *Id.* at ¶¶ 2, 33, 95, 101. Finally, Defendants' intentional misappropriation and conversion of $750,000 for personal use while concealing the Company's operational collapse shows conduct intended to cause injury or malice. *Id* at ¶¶ 1, 26, 32, 35, 39, 61, 99. These facts are confirmed in the accompanying declarations of Plaintiff and a witness. Troussieux Dec. at ¶¶ 3-15; Asoau Dec. at ¶¶ 3-20. Where, as here, the plaintiff has "alleged the details of Defendants' wrongful conduct and further alleged that they acted with actual malice," an award of punitive damages is warranted. *Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725, 727 (9th Cir. 2007); *see also* Fed.R.Civ.P. 8(b)(6) (allegations not denied are deemed admitted).

The amount of punitive damages to be awarded by the Court is based on: "(1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants." *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir.1984). Here, as set forth above, Plaintiff is entitled to a compensatory damages award of $750,000. Given the egregious nature of Defendants' conduct—converting three-quarters of a million dollars while maintaining an elaborate deception—punitive damages are appropriate to deter similar investment fraud schemes and the blatant conversion of funds. Such an award would also serve to make Plaintiff whole, given that, based on Defendants' concealment and refusal to provide accounting records, the full extent of Defendants' use and profiting from Plaintiff's funds is unknown.

Notably, this is not Segali's first offense. In recent years, he has effectuated multiple fraud campaigns over multiple individuals, entities, and even municipalities. *See, e.g.*, RJN, Exs. D and E; Asoau Dec. at ¶¶ 3-20. Defendants' misconduct has caused tremendous damage to individual lives and livelihoods (even causing one former employee to become homeless for 70 days) (*see* Asoau Dec. at ¶¶ 20), and has been blatant and egregious (*see* RJN, Exs. A-E). If the "purpose of

-15-

punitive damages is to punish wrongdoers," then punitive damages are particularly warranted here. *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 148 Cal.Rptr. 389, 582 P.2d 980, 990, n.13 (Cal. 1978).

While the true extent of Defendants' net worth is unknown, there is evidence to suggest that Segali is flush with cash and can afford these damages. For starters, Defendant Segali is known to live a lavish, cash-rich lifestyle. Asoau Dec. at ¶¶ 5, 17. Earlier this year, Segali was witnessed pulling large sums of cash out of ATM machines, spending $20,000 on a blackjack game, and enjoying an expensive dinner with $800 worth of caviar. *Id*. at ¶ 17. In addition, the allegations in the Complaint and the accompanying declarations show that Segali and Good Works have pocketed (at least) millions of dollars in cash from a number of individuals and entities. Segali's denial of discharge in bankruptcy suggests he has concealed these and other assets, which likely remain at his disposal. *See* RJN, Ex A; Cook Dec. at ¶ 14. Post-judgment examination will reveal the true nature of Defendants' net worth. Cook Dec. at ¶ 14.

Based on the foregoing and especially considering the egregious and continuous nature of Defendants' fraud, Plaintiff requests a punitive damages award of two and a half (2.5) times compensatory damages or $1.875 million. *See Prof'l Seminar Consultants*, 727 F.2d at 1473 (finding an award of $200,000 in punitive damages for fraud and conversion compared to $120,000 compensatory damages "not unreasonable"); *see also Anqin Wang v. California Inv. Immigr. Fund, LLC*, No. CV-17-08936-MWF, 2018 WL 4740176, at *4 (C.D. Cal. Apr. 24, 2018) (awarding $1,240,000.00 in punitive damages on a $560,000.00 special damages award); *Spencer v. Stafford*, No. 219CV01592RFBEJY, 2021 WL 765719, at *4 (D. Nev. Feb. 26, 2021), citing NRS 42.005 ("An award of exemplary or punitive damages made pursuant this section may not exceed . . . three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more . . . .").

### D.    Costs

Plaintiff is also entitled to its costs under Cal. Civ. Code § 3336 and Federal Rule of Civil Procedure, Rule 54(d)(1) as the prevailing party. *See Hrothgar*, 2015 WL 5853634, at *10. Plaintiff has incurred a total of $661.78 in costs, including $405.00 for the filing fee in this action, as well as $256.78 for the costs of service. Cook Decl. at ¶ 11.

### E.    Attorneys' Fees

While the traditional American rule typically allows for recovery for attorney's fees by contract or statute, "a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hall v. Cole*, 412 U.S. 1, 5 (1973). The "underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Id*. (citations omitted).

Here, Defendants' conduct reflects the requisite bad faith in multiple ways. *First*, Defendants' complete failure to respond to this litigation despite proper service and multiple notices demonstrates willful disregard for the judicial process. *Second*, the underlying fraudulent scheme itself—soliciting $750,000 under false pretenses while intending to convert the funds for personal use—demonstrates bad faith conduct that necessitated this litigation. *Third*, Defendants' concealment of financial information and refusal to provide basic accounting records to an LLC member shows deliberate obstruction designed to frustrate Plaintiff's rights.

Beyond this case, Segali's pattern of fraud against individuals, entities, and municipalities demonstrates his flagrant disregard for the law. His denial of discharge in bankruptcy based on asset concealment further evidences bad faith conduct and intentions. Such egregious and continuous misconduct warrants fee-shifting to deter similar fraudulent schemes and ensure Plaintiff is made whole for the costs necessitated by Defendants' bad faith. Accordingly, Plaintiff

respectfully requests an award of reasonable attorneys' fees incurred in prosecuting this action, in the amount of $41,520. *See* Cook Dec. at ¶¶ 8-10.

### F.    Accounting

The exact amount of funds diverted or misused by Defendants cannot be fully ascertained without a formal accounting because the financial records and accountings are solely within the possession and control of Defendants, and based on Defendants' commingling of Company funds, failure to maintain and provide proper books and records, and misusing of Plaintiff's contribution. Plaintiff is therefore entitled to an equitable accounting to determine the nature and amount of funds received, how they were used or diverted, and the extent of damages suffered. Plaintiff also seeks an accounting to determine what funds, if any, remain to pay Good Works' former employees and contractors. *See* Troussieux Dec. at ¶ 14.

## VII.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Court to grant default judgment against Defendants Segali and Good Works, and enter judgment against such Defendants and in favor of Plaintiff for: (1) compensatory damages in the amount of $750,000; (2) pre-judgment interest from December 30, 2024 in the amount of $71,730; (3) punitive damages in the amount of $1,875,000; (4) costs of suit in the amount of $661.78; (5) attorneys' fees in the amount of $41,520; and (6) an order compelling Production of all books, records, and financial documents.

NATH COOK LAW P.C.

Dated: November 8, 2025

By: /s/ Rupa Nath Cook
Rupa Nath Cook
Norman Xavier
Attorneys for Plaintiff Luc Troussieux