# EXHIBIT D

Electronically Filed
5/19/2023 9:47 AM
Sixth Judicial District, Bannock County
Jason Dixon, Clerk of the Court
By: Todd Ramirez, Deputy Clerk

BLAKE G. HALL
LOGAN M. HAGLUND
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB No. 2434 & 11432*
bgh@hasattorneys.com
lmh@hasattorneys.com

Attorneys for Plaintiff

STATE OF IDAHO } ss    Gabiola, Javier
COUNTY OF BANNOCK }

I hereby certify the foregoing is a full, true and
correct copy of an instrument as the same now
remains on file and of record in my office.
WITNESS my hand and official seal hereto affixed

DATED **11/5/2025 2:10:07 PM**

Jason Dixon, Clerk of the District Court

By _____
Deputy

IN THE DISTRICT COURT OF THE SIXTH JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF BANNOCK

BANNOCK COUNTY, a political
subdivision of the State of Idaho,

　　　　Plaintiff,

v.

GOOUTLOCAL.COM, INC
d/b/a Go Out Local/The Go Agency,
JONATHAN SEGALI, and John
Does/Jane Does.

　　　　Defendant(s).

Case No. CV03-23-01602

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

COMES NOW, Plaintiff, Bannock County, by and through counsel of record, Hall Angell &

Associates, LLP, and complains and alleges against the Defendants as follows:

## PARTIES

1. Plaintiff, BANNOCK COUNTY, is a political subdivision of the State of Idaho.

2. Defendant, GoOutLocal.Com, Inc, is an Idaho Corporation which also does business

　　under the names Go Out Local and The Go Agency.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

3. Jonathan Segali is a resident of the State of Idaho.

4. John and/or Jane Does are presently unknown parties residing at unknown locations who have ownership or partnership interest in GoOutLocal.Com, Inc.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this matter under I.C. §5-514 because the individual Defendants live and/or operate in Idaho and because this case involves: (1) a contract which was entered into in Idaho and was intended to be performed in Idaho; and (2) involves tortious conduct and breaches of contract that either occurred in Idaho or were intended to cause harm in Idaho.

6. Venue is proper in this Court because the events forming the basis for this action occurred in this County.

## FACTS

7. Between January 1, 2021, and June 30, 2021, Plaintiff and Defendant entered into three separate agreements allowing the Defendant to utilize the Portneuf Health Trust Amphitheatre for various events. Those agreements include a Sponsorship Sales Agreement, executed June 30, 2021 (attached hereto as Exhibit A), a License Agreement, executed May 3, 2021 (attached hereto as Exhibit B), and an Event and Service Agreement, executed February 16, 2021 (attached hereto as Exhibit C).

8. In exchange for the use of the Portneuf Health Trust Amphitheatre, Defendant agreed to pay Plaintiff a percentage of each ticket sold as well as a share of net food and beverages sold during each event.

9. Over the course of six months between May and October of 2022, Defendant arranged for nineteen shows to be performed at the Portneuf Health Trust Amphitheatre, with over

20,000 tickets sold during that time frame. Defendants had initially represented to

Bannock County that it received $264,023.00 in concession sales; however, upon

inspection of Defendants' Square sales records, it was revealed that Defendants actually

brought in $373,751.75 in concessions, a misrepresentation of $109,728.75.

10. Bannock County paid for all hard money, or immediate expenditures, to various vendors

during that same time period. In sum, Bannock County paid $130,176.04 in hard money

costs which are to be reimbursed under the terms of the contracts.

11. As a result of the ticket sales, concession sales, and hard money costs, and in compliance

with the terms of the agreements entered into therein, Bannock County is entitled to

approximately $49,932.50 in ticket sales, $37,375.18 in concession sales, and

reimbursement of $130,176.04 in hard money costs.

12. Defendant has thus far refused to honor its contractual obligations and has not paid the

amount due and owing under the terms of the contract.

13. In May of 2022, Defendant's CEO, Jonathan Segali approached the Bannock County

Board of Commissioners and informed them that he could arrange to have Kid Rock play

at the Portneuf Health Trust Amphitheatre. To do so, however, Mr. Segali represented

that he would need a $250,000.00 deposit prior to arranging for Kid Rock. As part of the

agreement for the $250,000.00 deposit, Mr. Segali stated that, in the event he was unable

to secure Kid Rock, the deposit would be returned in full.

14. Shortly thereafter, Bannock County provided the $250,000.00 deposit. Mr. Segali had

indicated he would line Kid Rock up to perform sometime in August of 2022; however,

after numerous attempts to contact Mr. Segali, it became apparent that Kid Rock was not

going to be performing at the Portneuf Health Trust Amphitheatre. This was further

confirmed by staff for GoOutLocal who informed Bannock County that Kid Rock would

not be coming. Despite this, Mr. Segali and GoOutLocal have refused to refund the

$250,000.00 deposit as promised.

15. Upon information and belief, Defendant GoOutLocal.Com, Inc., at all times relevant to

this action has been undercapitalized and served solely to act as an alter ego to Jonathan

Segali and the associated John/Jane Does.

## COUNT 1 – BREACH OF CONTRACT

16. Plaintiff incorporates the facts as set forth in their entirety.

17. Defendant, GOOUTLOCAL.COM, INC., is contractually obligated, according to the

terms and conditions set forth in Sponsorship Sales Agreement, License Agreement, and

Event and Service Agreement, to pay Bannock County a percentage of all ticket and

concession sales, as well as reimburse Bannock County for hard money costs.

18. Despite multiple demands, GOOUTLOCAL.COM, INC., has failed to pay Bannock

County $49,932.50 in ticket sales, $37,375.18 in concession sales, and $10,176.04 in hard

money reimbursements for acts performed at the Portneuf Health Trust Amphitheatre

between May and October 2022.

19. Additionally, Mr. Segali verbally agreed to arrange for Kid Rock to perform at the

Portneuf Health Trust Amphitheatre in exchange for a $250,000.00 deposit from Plaintiff.

Mr. Segali further agreed that, should he fail to secure Kid Rock, the full deposit would

be refunded to Plaintiffs.

20. Mr. Segali and GoOutLocal.Com have failed to secure Kid Rock to perform at the

Portneuf Health Trust Amphitheatre within a reasonable period and have refused to

refund the full amount of the deposit as agreed upon in writing.

21. GoOutLocal.Com, at all times relevant to this action, was undercapitalized and serving solely as an alter ego for Jonathan Segali and various John/Jane Does. As such, Plaintiff is entitled to pierce to corporate veil and hold Mr. Segali and the various John/Jane Does personally liable for unpaid amounts due and owing under the terms of the contract.

22. Plaintiff is entitled to recover the balance due and owing under the terms of the contracts, together with any pre-judgment interest as allowed under Idaho law.

## COUNT 2 – FRAUD

23. Plaintiff realleges and incorporates by reference the allegations of the prior paragraphs of this Complaint as though the same were set in full.

24. Defendants, Mr. Segali, represented to Plaintiffs that he could secure Kid Rock to perform as long as he had a $250,000.00 deposit.

25. Despite Mr. Segali's representations, GoOutLocal.com and Mr. Segali made no efforts to secure Kid Rock to perform at the Portneuf Health Trust Amphitheatre.

26. Mr. Segali knew, or should have known, that he would be unable to secure Kid Rock within a reasonable amount of time based upon the fact that Kid Rock had already been booked during the dates indicated for August 2022.

27. Despite having this information, Mr. Segali still promised a performance by Kid Rock and solicited the $250,000.00 deposit from the Plaintiff.

28. Plaintiff reasonably relied upon Mr. Segali's misrepresentations but would not have done so had they known that Kid Rock was fully booked. As a result of Mr. Segali's fraudulent representations, Plaintiff paid GoOutLocal.Com the $250,000.00 deposit.

29. Mr. Segali's illegal and/or fraudulent acts are outside the bounds of his duties and obligations to GoOutLocal.Com, Inc., and Mr. Segali is using GoOutLocal.Com, Inc., as

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

an alter ego to shield himself from the repercussions of his fraudulent inducement of the Plaintiff.

30. Plaintiff is entitled to a recission of this agreement as well as a judgment against GoOutLocal.Com, Inc., and Mr. Segali individually, in the amount of $250,000.00 for the deposit paid to GoOutLocal.com, together with any pre-judgment interest as allowed under Idaho Law.

## COUNT 3 – ATTORNEY FEES

31. Plaintiff realleges and incorporates by reference the allegations of the prior paragraphs of this Complaint as though the same were set in full.

32. As a result of the Defendants actions, Plaintiff has been required to retain legal services.

33. Plaintiff has a right to recover reasonable costs and attorney fees from Defendants pursuant to Idaho Code §§12-121 and 12-120(3). Additionally, Plaintiff has a contractual right under Paragraph 15 of the Event and Service Agreement, Paragraph 6.6 of the License Agreement, and Paragraph (f) of the Sponsorship Sales Agreement, to attorney's fees and costs in the enforcement of Defendants' contractual obligations.

34. In the event this action is uncontested, Plaintiffs should be awarded attorney fees in the amount of $6,000.00.

## DEMAND FOR JURY TRIAL

35. Plaintiff demands a trial by jury as to all issues triable to a jury in this action.

WHEREFORE, Plaintiff prays for the following relief:

36. Judgment against Defendants in an amount to be determined at trial, together with prejudgment interest as allowed by Idaho Law.

37. Reasonable costs and attorney fees to Plaintiff in bringing this action pursuant to Idaho Code §§12-121 and 12-120(3), Paragraph 15 of the Event and Service Agreement, Paragraph 6.6 of the License Agreement, and Paragraph (f) of the Sponsorship Sales Agreement. In the even this action is uncontested, Plaintiffs request an award of attorney fees in the amount of $6,000.00, in addition to the necessary costs of this case.

38. For such other and further relief as the Court deems just and appropriate.

DATED this *18* day of *May* 2023.

BLAKE G. HALL

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

## SPONSORSHIP SALES AGREEMENT

This SPONSORSHIP SALES AGREEMENT ("Agreement") is entered into on this 10th day of May, 2021 by and between Portneuf Health Trust Amphitheatre and Bannock County (hereinafter collectively referred as to "Owners") and GoOutLocal.Com, Inc. (hereinafter referred to as "Promoter"). The Owners and Promoter shall be referred to collectively as "Parties."

WHEREAS, the Promoter is a marketing company who offers and provides management and sales services for live events and concerts.

WHEREAS, the Owners own the Bannock County Event Center where the Portneuf Amphitheatre is situated, along with several other event centers and fields.

WHEREAS, the Owners want to hire Promoter to procure sponsorships from corporate and/or private entities or individuals to provide funding for events performed at the Bannock County Event Center and Portneuf Amphitheatre ("Premises").

WHEREAS, Promoter is willing to procure sponsorship sales for events performed at the Premises.

WHEREAS, the Owners and Promoter agree to enter this Agreement in accordance with the terms, conditions and obligations set forth herein.

NOW, THEREFORE, in consideration of the mutual promises, terms, obligations and undertakings set forth herein, and other good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, the Parties agree as follows:

1.     General Term of Agreement.  It is the intent of the Owners to establish a contractual relationship with Promoter to procure and sell sponsorships to corporate and/or private entities or individuals for events performed at the Premises.  The intent and understanding of the Parties is that the sponsorship sales will provide additional revenue from the live events and concerts.

2.     Term of Agreement.  This Agreement shall commence on the date hereof and shall continue for a term of two (2) years ("Initial Term"), unless earlier terminated in accordance with its terms.  At the end of said Initial Term, this Agreement shall automatically renew for successive subsequent one (1) year terms thereafter unless either party notifies the other thirty (30) days before the end of the existing term that the party does not intend to renew or unless otherwise terminated in accordance with the terms and conditions of this Agreement.

3.     Termination of the Agreement.  This Agreement shall terminate upon any one of the following events:

(a)     The mutual agreement of the parties in writing setting forth the effective date of termination;

SPONSORSHIP SALES AGREEMENT - 1



(b)     Either party becoming insolvent, or the subject of bankruptcy, receivership, reorganization, dissolution, liquidation or other similar proceedings, which proceedings are not dismissed within sixty (60) days of their commencement;

(c)     Promoter fails to provide an initial prospect list and a six-month progress review;

(d)     A material breach by either party of any term or condition set forth in this agreement; provided, however, the non-breaching party must provide written notice of the breach to the other party and allow for a cure period of not less than thirty (30) days in which event, if the cure is effected within the time set forth, the Agreement shall continue, or, in the event that the breaching party does not cure within the stated time, the agreement shall terminate at the end of the stated cure period.

4.     Independent Contractor Status.  It is mutually understood and agreed that Promoter and Owners shall act as independent contractors in their respective performances under this Agreement.  No provision herein shall be deemed or construed to create a joint venture, partnership or employment relationship between Promoter and Owners.  None of the provisions of this Agreement are intended to create nor shall be construed to create any relationship between Promoter and Owners other than that of independent contractors.

5.     Obligations, Rights and Representations of Promoter.

(a)     Marketing and Sponsorship Sales of Events and Concerts.  Except as otherwise provided in this agreement, Promoter shall have the exclusive right to market and sell sponsorships for the live events and concerts at the Premises subject to the limitations provided herein.  As part of Promoter's right to market the live events and concerts held at the Premises, Promoter shall have the right to establish a corporate marketing program and offer for sale a Naming Rights Sponsor and other sponsorship packages as mutually agreed upon by Promoter and Owners.  Any sales shall be subject to Owners' approval.  Promoter acknowledges that Owners have the right to allow additional sponsorships relating to certain events and concerts held at the premises and that the approval of those sponsorships shall be within the sole discretion of Owners, provided, however, Owners will keep Promoter informed about said sponsorships and will, on request, meet and confer with Promoter concerning those sponsorships, and will make a good faith effort to avoid or mitigate potential conflicts between those sponsorships and sponsorships obtained by Promoter.

(b)     Confidentiality.  Promoter agrees to maintain confidentiality of any proprietary information prepared or developed by Owners and which information Owners identify in writing to Promoter as proprietary information.  Upon termination of this Agreement, all documents, records, notebooks, or other similar documents containing any confidential information, including all existing copies, then in Promoter's possession or control, whether prepared by promoter or others, shall be the sole property of Owners and shall promptly be returned to Owners.  Proprietary information, as used herein, does not include (i) information which is generally available to the public through no act or failure to act of Promoter, (ii)

SPONSORSHIP SALES AGREEMENT - 2

information which was known to the party prior to this agreement being executed or becomes known after execution of this agreement through a third party not previously known to Promoter to be prohibited from making such disclosure or (iii) information that is required by law or legal process to be made available to third parties.

        (c)    <u>Services.</u>  Promoter shall be responsible for the strategic development of the sponsorship program and the sales process of seeking corporate and/or private sponsorships for the live events and concerts held at the Premises.  Promoter agrees to appoint a Project Manager and provide additional staff to help execute the sponsorship process.  Promoter shall provide Owners with an initial prospect list and provide a six-month progress review.  Promoter shall also provide Owners with signed contracts of successful sales to corporate and/or private sponsors in which Owners may execute contract terms and send invoices to said corporate and/or private sponsors.

        (d)    <u>Notification.</u>  Promoter shall provide notice to Owners of receipt of any notice, whether oral or written, of any action proposed to be taken, or being taken, against Promoter by or on behalf of any governmental agency, vendor of services or supplies, individual, association, corporation, or other person which action would result in Promoter being unable to fulfill its obligations pursuant to this Agreement.  Promoter shall provide written notice of such proposed or actual action to be taken within three (3) business days of receipt of such notification.

        (e)    <u>Compliance.</u>  Promoter shall agree to and comply with all other applicable terms and conditions of this agreement in order to implement the intent of the parties in executing this Agreement.

        (f)    <u>Mutual Indemnity.</u>  For purposes of this agreement, the Parties hereby agree to indemnify, defend and hold harmless the other party, its employees and agents from any and all loss, damage, liability or expenses of any kind, unless the loss was caused or incurred or alleged to be caused or incurred in whole as a result of the negligence or other actionable fault of the other party.

        (g)    <u>Liability Insurance.</u>  Promoter shall purchase, obtain and maintain during the Term of this Agreement, a policy of commercial general liability insurance, in an amount of not less than $500,000.00 per occurrence and $1,000,000 in the aggregate for bodily injury and property damage combined.  The policy shall insure Owners named as additional insured on the policy.  Owners shall purchase, obtain and maintain any other insurance policy coverage it deems necessary for its Premises.

       6.    <u>Obligations, Rights and Representation of Owners.</u>

        (a)    <u>Rights and Ownership.</u>  Owners are the rightful owners of the Premises. Promoter agrees that the Premises and all intellectual property rights relating to the Premises, its name and logo, shall be and remain the sole property of Owners.  Promoter expressly agrees that neither it nor its agents, including sponsors, will assert any rights to any ideas, inventions, discoveries, concepts or methods, or improvements thereof, relating to the Premises during or

SPONSORSHIP SALES AGREEMENT - 3

related to the term of this Agreement. All such idea, inventions, discoveries, concepts and methods, or improvements thereof, shall be automatically the sole and absolute property or Owners.

(b)    Services. Owners shall provide Promoter with all necessary information, including but not limited to, building details, renderings, construction timelines and any other reasonable information about the Premises requested by Promoter to allow for accurate presentation to potential corporate and/or private sponsors.

(c)    Confidentiality. Owners agree to maintain confidentiality of any proprietary information related to sponsorship procurement prepared or developed by Promoter and which information Promoter identifies in writing to Owners as proprietary information. Upon termination of this Agreement, all documents, records, notebooks, or other similar documents containing any confidential information, including all existing copies, then in Owners' possession or control, whether prepared by promoter or others, shall be the sole property of Promoter and shall promptly be returned to Promoter. Proprietary information, as used herein, does not include (i) information which is generally available to the public through no act or failure to act of Owners, (ii) information which was known to the party prior to this agreement being executed or becomes known after execution of this agreement through a third party not previously known to Owners to be prohibited from making such disclosure or (iii) information that is required by law or legal process to be made available to third parties.

(d)    Notification. Owners shall provide notice to Promoter of receipt of any notice, whether oral or written, of any action proposed to be taken, or being taken, against Owners by or on behalf of any governmental agency, vendor of services or supplies, individual, association, corporation, or other person which action would result in Owners being unable to fulfill its obligations pursuant to this Agreement. Owners shall provide written notice of such proposed or actual action to be taken within three (3) business days of receipt of such notification.

(e)    Compliance. Promoter shall agree to and comply with all other applicable terms and conditions of this agreement in order to implement the intent of the parties in executing this Agreement.

7.    Compensation. Owners shall pay to Promoter fifty percent (50%) of all net revenue generated from each corporate and/or private sponsorship procured and/or secured by Promoter after all expenses are paid and deducted from the gross revenue generated by the sponsorship.

8.    Miscellaneous.

(a)    Non-Assignability. This agreement shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, successors and permitted assigns. This Agreement shall not be assigned by either party without the prior written consent of the other party. Except as provided otherwise herein, neither Promoter nor Owners shall subcontract or

SPONSORSHIP SALES AGREEMENT - 4

delegate all or substantially all of its duties and obligations hereunder without prior written consent of the other party.

        (b)    Severability. The invalidity or unenforceability of any terms or provisions of this Agreement shall not effect the validity or enforceability of any other terms or provisions.

        (c)    Entire Agreement. The Parties declare that this Agreement contains the entire understanding between them and supersedes all pre-existing or contemporaneous agreements or understandings, oral or written, respecting the subject matter hereof.

        (d)    Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Idaho in all respects, including matters of construction, enforcement and performance, without regard to principles of conflicts of laws. The Parties agree that the venue of any action to enforce this Agreement shall be Ada County, Idaho.

        (e)    Notices. Any notice required to be given hereunder shall be sufficient and deemed given when in writing and sent by email transmission or by certified or registered mail, return receipt requested, first class postage prepaid, or by courier service to the parties' principal offices.

        (f)    Attorneys' Fees and Costs. Should it be necessary for any party to this Agreement to initiate or defend any legal proceedings wherein any issues arising under the Agreement are adjudicated, the party to such legal proceedings who substantially prevails shall be entitled to reimbursement of their attorney fees, costs, expenses and disbursements, (including the fees and expenses of expert and fact witnesses) reasonably incurred or made by the substantially prevailing party in preparing to bring suit, during suit, on appeal, on petition for review and in enforcing any judgment or award from the party who did not substantially prevail.

        (g)    Modification. This Agreement can only be changed, amended or modified, in writing, signed and executed by all parties.

        (h)    Counterparts. This Agreement may be executed in two or more counterparts, transmitted by email, facsimile or otherwise, each of which shall be deemed an original, and all of which together shall constitute a single instrument.

        IN WITNESS WHEREOF the Parties have caused this Agreement to be executed by them the day and year first above written.

GOOUTLOCAL.COM, INC.           PORTNEUF HEALTH TRUST AMPHITHEATRE

_____       _____
Jonathan Segali               Ernie Moser
Its: CEO                 Its:  Chair of the Board of Commissioners

SPONSORSHIP SALES AGREEMENT - 5

delegate all or substantially all of its duties and obligations hereunder without prior written consent of the other party.

(b)    Severability.  The invalidity or unenforceability of any terms or provisions of this Agreement shall not effect the validity or enforceability of any other terms or provisions.

(c)    Entire Agreement. The Parties declare that this Agreement contains the entire understanding between them and supersedes all pre-existing or contemporaneous agreements or understandings, oral or written, respecting the subject matter hereof.

(d)    Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Idaho in all respects, including matters of construction, enforcement and performance, without regard to principles of conflicts of laws. The Parties agree that the venue of any action to enforce this Agreement shall be Ada County, Idaho.

(e)    Notices.  Any notice required to be given hereunder shall be sufficient and deemed given when in writing and sent by email transmission or by certified or registered mail, return receipt requested, first class postage prepaid, or by courier service to the parties' principal offices.

(f)    Attorneys' Fees and Costs.  Should it be necessary for any party to this Agreement to initiate or defend any legal proceedings wherein any issues arising under the Agreement are adjudicated, the party to such legal proceedings who substantially prevails shall be entitled to reimbursement of their attorney fees, costs, expenses and disbursements, (including the fees and expenses of expert and fact witnesses) reasonably incurred or made by the substantially prevailing party in preparing to bring suit, during suit, on appeal, on petition for review and in enforcing any judgment or award from the party who did not substantially prevail.

(g)    Modification.  This Agreement can only be changed, amended or modified, in writing, signed and executed by all parties.

(h)    Counterparts.  This Agreement may be executed in two or more counterparts, transmitted by email, facsimile or otherwise, each of which shall be deemed an original, and all of which together shall constitute a single instrument.

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed by them the day and year first above written.

GOOUTLOCAL.COM, INC.                     PORTNEUF HEALTH TRUST AMPHITHEATRE

Jonathan Segali                          Ernie Moser
Its: CEO                                 Its:  Chair of the Board of Commissioners

SPONSORSHIP SALES AGREEMENT - 5

Scanned with CamScanner

BANNOCK COUNTY EVENT CENTER

_____

Its:

STATE OF IDAHO    )
                  ss.
County of Ada     )

On this 30 day of May, in the year 2021, before me, a Notary Public in and for said State, personally appeared JONATHAN SEGALI known to me to be the CEO of GoOutLocal.Com, Inc., and the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of GoOutLocal.Com, Inc.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residence: Old Boise
Commission Expires: 4/30/24

STATE OF IDAHO    )

County of Bannock )

On this 6th day of May, in the year 2021, before me, a Notary Public in and for said State, personally appeared ERNIE MOSER known to me to be the Chairman of the Board of Commissioners for the Portneuf Health Trust Amphitheatre, and the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of the Portneuf Health Trust Amphitheatre.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residence: Pocatello, Id.
Commission Expires: 3.21.22

SPONSORSHIP SALES AGREEMENT - 6

Scanned with CamScanner

BANNOCK COUNTY EVENT CENTER

Its: _____    June 29, 2021

STATE OF IDAHO    )
                              ss.
County of Ada      )

    On this _____ day of May, in the year 2021, before me, a Notary Public in and for said State, personally appeared JONATHAN SEGALI known to me to be the CEO of GoOutLocal.Com, Inc., and the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of GoOutLocal.Com, Inc.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residence: _____
Commission Expires: _____

STATE OF IDAHO        )
                                  ss.
County of Bannock    )

    On this _____ day of May, in the year 2021, before me, a Notary Public in and for said State, personally appeared ERNIE MOSER known to me to be the Chairman of the Board of Commissioners for the Portneuf Health Trust Amphitheatre, and the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of the Portneuf Health Trust Amphitheatre.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residence: Pocatello, Id
Commission Expires: 3-21-22

SPONSORSHIP SALES AGREEMENT - 6

STATE OF IDAHO    )
                          ss.
County of Bannock    )

    On this 29th day of May, in the year 2021, before me, a Notary Public in and for said State, personally appeared Scott Crowther known to me to be the Business Manager & Event Director for the Bannock County Event Center, and the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of the Bannock County Event Center.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Kristina Davenport
Notary Public for Idaho
Residence: Pocatello
Commission Expires: 3|2|22



SPONSORSHIP SALES AGREEMENT - 7

# LICENSE AGREEMENT
## Bannock County Event Center and Wellness Complex

This LICENSE AGREEMENT ("Agreement") is made and entered into this ____3rd____ day of __May__, by and between Bannock County ("Licensor") and _Go Out Local/The Go Agency_ ("Licensee").

## RECITALS

A. Licensor desires to hire Licensee to furnish concessions in connection with events held at the Bannock County Event Center and Wellness Complex.

B. Licensee has represented that Licensee has the necessary expertise, experience, and qualifications to perform the required duties.

NOW, THEREFORE, in consideration of the mutual premises, covenants, and conditions herein contained, the parties agree as follows:

## ARTICLE I – TERMS OF LICENSE AGREEMENT

2.1 Term: This License Agreement shall become effective _May 3, 2022_____ and shall continue until _____December 31, 2022___ or until such termination or default as provided for by this Agreement.

2.2 Renewal: This License Agreement can be renewed twice for successive Concession Seasons. Formal execution of an Addendum to this Agreement, setting forth the intentions of the Licensor and Licensee to renew and any new or modified terms and conditions, shall be required for renewal. Neither Licensor nor Licensee shall be under any obligation to renew this License Agreement.

2.3 Termination: Either party may terminate this Agreement without cause and without regard to payment periods by providing the other party thirty (30) days written notice. The ability to terminate this Agreement without cause expressly includes Licensor's ability to terminate under any circumstances which involve non-appropriation of funds by Bannock County. Under the following circumstances, a shorter termination period is allowed, as well:

   a. Total destruction: Should the facility or an essential part of the area used by Licensee for business operations be totally destroyed by fire, flood, or other casualty, this Agreement shall immediately terminate.
   b. Partial destruction: In the case of partial destruction of the area used by Licensee for business operations, either party may terminate this Agreement within ten (10) days following such partial destruction, such notice to be given to the other party not less than ten (10) days prior to the chosen date of termination.
   c. If Licensee makes an assignment for the benefit of creditors, or is placed in receivership or adjudicated bankrupt, or takes advantage of any bankruptcy or insolvency law, Licensor may terminate this Agreement by giving written notice to Licensee specifying the date of termination, such notice to be given not less than ten (10) days prior to the date specified in such notice for the date of termination.


EXHIBIT
B

d. Licensor expressly reserves the right to terminate this Agreement without cause under any circumstances which involve non-appropriation of funds by Bannock County.

## ARTICLE III – LICENSE AND PREMISES

**3.1 Grant of License:** Licensor hereby grants to Licensee an exclusive license to operate concessions in the area of Event Center and Wellness Complex, expect for the East and West Amphitheater Concession Stands in accordance with the terms and conditions of this Agreement.

**3.2 License Premises:** The Licensee is allowed access to the area of use and the ability to operate concessions therein during regular operating hours of the facility.

**3.3 Exclusive and Revocable License:** Licensee acknowledges this exclusive License is revocable should Licensee's business operations not comport with the terms of this Agreement.

**3.4 Limitations on Use:** Licensee acknowledges this exclusive, revocable License does not guarantee participation in community or department sponsored events and activities held within the area of use. Any arrangements for Licensee's participation at such events or activities, including all fees to event sponsors, are the sole responsibility of Licensee. The terms of this Agreement shall continue to apply during Licensee's participation at such events, including Licensee's obligations to Licensor under *Article V – Fees and Related Provisions.*

**3.5 Lawful Business Use:** During the term of this Agreement, Licensee shall use the facility exclusively for the business described herein and in any attached exhibits. The Licensee shall not allow such premises or any part thereof to be used for any immoral or illegal purposes and shall not allow, suffer, or permit such premises to be used for any purpose, business, activity, use function, or object to which Licensor objects in writing. The Licensee shall, at all times during the terms of this Agreement, be subject to the lawful exercise of the police power of Bannock County.

## ARTICLE IV – DUTIES OF LICENSEE

**4.1 Basic Services:** Licensee agrees to perform the services set forth in **Exhibit A, "Seasonal Concessions Proposal Application".**

**4.2 Duties:** In exchange for the privilege of obtaining this exclusive, revocable license, Licensee agrees to:
a. Provide all services and business operations in a safe and law-abiding manner.
b. Follow all rules and regulations of the area of use, the laws of Bannock County, and applicable laws of the State of Idaho.
c. Licensee shall provide a profit and loss statement to the Event Center along with the 20% net profit payout for each concession stand located at the Event Center/Wellness Complex on or before the 28th of each month for the prior months services.
d. Provide daily and continuous clean-up of all debris in the area used, occupied, and immediately adjacent to the facility that is caused or created by Licensee's employees, servants, agents, business invitees, patrons, and guests.
e. Keep all company vehicles on roadways and improved parking lots within or associated with the property boundaries.
f. Pay for all damages to the area of use caused directly or proximately by Licensee's business equipment, employees, servants, agents, business invitees, patrons, and guests and not a result of normal wear and tear that would have occurred had Licensee's business not operated at the facility.
g. At the termination of this Agreement, either by natural expiration or default as provided, return the area of use to its original condition excepting normal wear and tear.

**4.3 No Assignment:** Licensee shall not assign this Agreement or any of its privileges hereunder, either voluntarily or

involuntarily, without the prior written consent of Licensor.

4.4 Limitations: This Agreement shall apply to and be binding on Licensee only to the extent Licensee's business operates within the confines of the area of use.

4.5 Default and Cancellation: If Licensee is in default of any of the terms and conditions of this Agreement or violates any laws of the United States, the State of Idaho, or applicable Bannock County ordinances, rules or regulations and thereafter fails or refuses to perform or correct the conditions constituting a breach or default, after five (5) days written notice this Agreement shall be deemed terminated and forfeited without further notice or demand, and all rights of Licensee hereunder shall be terminated.

4.6 Code of Conduct: In order to ensure a professional and respectful relationship with the general public, Bannock County requires its business licensees to behave in a civil and courteous manner at all times. While it is impossible to list every type of conduct that is unacceptable, the following are examples of behavior that may, at the sole discretion of the Licensor, result in license revocation:

   a.  Harm or threat of harm to any member of the public, County employee, County government, or County property, regardless of location.
   b.  Physical violence against persons or property.
   c.  Sabotage of County property or processes.
   d.  Theft or unauthorized removal or possession of the County's property or another person's property from County premises.
   e.  Speech or conduct with the public that violates commonly accepted standards and that, under present circumstances, has no redeeming social value, including the use of profane, indecent, or abusive language.
   f.  Speech or conduct deemed rude, disrespectful, aggressive, intimidating, harassing or otherwise inappropriate when conducting licensee's business.
   g.  Making malicious, vindictive, false, and/or harmful statements about others or engaging in verbal abuse, altercations or outbursts.
   h.  Any conduct that obstructs, disrupts, or interferes with County business, service, work environment or administrative functions, including County sponsored events.
   i.  Untruthfulness related to use of the license which could hinder or jeopardize the County's interests.
   j.  Use, possession, distribution, or sale of illegal drugs, paraphernalia, or controlled substances not prescribed to the user by a physician, on County property or at County sponsored events, including the use of alcohol, drugs, or controlled substances while working in accordance with the license.

4.7 Criminal History: Licensee shall not employ to work under the terms of this License any employee, servant, or agent who is unsuitable to interact with children. "Unsuitable to interact with children" shall mean having been convicted of a crime listed in Idaho Code § 18-8304 (or similar statute from any other state or territory) or required to register under Idaho's Sexual Offender Registration Notification and Community Right-to-Know Ace, Idaho Code § 18-8301 et seq. (or similar statue from any other state or territory).

   a.  Licensee, at their own expense, shall conduct appropriate and applicable background and reference checks on each of its employees, servants, and/or agents to ascertain that there is no history of behavior that would make Licensee or its employees, servants, or agents unsuitable to interact with children.
   b.  By signing this Agreement, Licensee hereby certifies to Licensor that each of Licensee's employees, servants, and/or agents is suitable to interact with children and shall continue to be suitable to interact with children during all times that Licensee is conducting business operations within the facilities.

## ARTICLE V – INDEMNIFICATION AND INSURANCE

5.1 Indemnification: Licensee shall protect, defend, and hold Licensor and its officials, agents and/or employees completely harmless from and against any and all liabilities, losses, suits, claims, judgments, fines or demands

arising by reason of injury or death of any person or damage to any property, including all reasonable costs for investigation and defense thereof (including but not limited to attorney fees, court costs, and expert fees), of any nature whatsoever arising out of the negligent acts or omissions of Licensee or its officers, agents, employees, contractors, subcontractors, or invitees incident to this License and/or the use or occupancy in the area of use regardless of where the injury, death, or damage may occur. The provisions of this section shall be deemed to be a separate contract between the parties and shall survive the expiration or any default, termination or forfeiture of this License.

5.2 Liability Insurance: Licensee shall maintain, and specifically agrees that it will maintain, throughout the term of this Agreement, Commercial General Liability Insurance, Workers' Compensation Insurance, and Employers' Liability Insurance in the form of a certificate of insurance issued on behalf of Bannock County, naming the County (Licensor) as an additional insured on the liability policies, for the following minimum limits and coverages:

> Commercial General Liability Insurance in the following amounts:
>
>> General Aggregate $2,000,000
>> Product/Completed Operations Aggregate $2,000,000
>> Personal & Advertising Injury Liability $1,000,000
>> Per Occurrence $1,000,000
>> Fire Legal Liability $50,000
>
> Workers' Compensation Insurance – regardless of the number of employees or lack thereof – in the statutory limits as required by the State of Idaho.
>
> Employers' Liability Insurance in the following amounts:
>
>> Bodily Injury by Accident $100,000 each accident
>> Bodily Injury by Disease $500,000 policy limit
>> Bodily Injury by Disease $100,000 each employee

The limits of insurance shall not be deemed a limitation of the covenants to indemnify and save an hold harmless Licensor. And if Licensor becomes liable for an amount in excess of the insurance limits herein provided, Licensee covenants and agrees to indemnify and save and hold harmless Licensor from and for all such losses, claims, actions or judgments for damages or liability to persons or property. Licensee shall provide Licensor with a Certificate of Insurance or other proof of insurance evidencing Licensee's compliance with the requirements of this paragraph and file such proof of insurance with Licensor's Risk Manager and Department of Parks and Recreation. In the event the insurance minimums of the Idaho Tort Claims Act are changed to exceed the above-listed amounts, the Licensee shall immediately submit proof of compliance with the changed limits. If Licensee fails to provide or maintain said insurance in the amounts listed, even if cured by Licensee at a subsequent date, such shall be deemed an incurable default by Licensee, and Licensor may exercise any rights or remedies for such default that Licensor may have under this License or at law or equity, including, without limitation, the right to terminate this License.

5.3 Other Insurance Coverage: Licensee shall be solely responsible for obtaining any other types of insurance issued for the benefit of Licensee, including but not limited to Property Insurance insuring the property owned by Licensee which is used, held, or stored at the facility. Evidence of all such insurance shall be furnished to Licensor upon execution of this Agreement.

## ARTICLE VI – GENERAL PROVISIONS

6.1 Non-Discrimination: Licensee, in their use of the License herein granted, shall not discriminate or permit discrimination against any person or group of persons in any manner on the grounds of race, color, sex, religion, national origin or ancestry, age, physical handicap, sexual orientation or gender identity/expression. Non-compliance with such assurances shall constitute a breach of this License Agreement, and in the event of non-

compliance, Licensor may take appropriate action to enforce compliance and may terminate this Agreement or seek judicial enforcement thereof.

6.2 Compliance with Laws: In performing the scope of services required hereunder, Licensee shall comply with all applicable laws, ordinances, and codes of Federal, State, and local governments including, but not limited to, required licensing for drivers of commercial vehicles in the State of Idaho, workers compensation insurance, and all sales and use tax legislation. The Licensor hereby requires Licensee to show proof of workers compensation insurance and of compliance with any applicable statute, ordinance or regulation with which Licensee is required to comply.

6.3 Applicable Law: This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Idaho and the ordinances of Bannock County.

6.4 Interpretation: The paragraph headings used herein are for convenience only, are not a part of this Agreement, and are not to be used in construing it.

6.5 Notices to Licensee: The Licensee's address for all notices set forth in this Agreement shall be as follows, or such other Idaho address as the Licensee may designate to Licensor in writing:

> Licensee Name: Go Out Local/The Go Agency
> Address: 333 Rossi Street, Suite 100
> Address: Boise, Idaho 83706
> Phone: (208) 407-9886

6.6 Attorney's Fees: Should any litigation be commenced between the parties to this Agreement, the prevailing party shall be entitled, in addition to any other relief as may be granted, to court costs and reasonable attorneys' fees as determined by a court of competent jurisdiction. This provision shall be deemed a separate contract between the parties and shall survive any default, termination, or forfeiture of this Agreement.

6.7 Independent Parties: Licensee is and shall at all times be considered an independent permittee and is in no way an employee of Bannock County.

   a. The parties intend that this Agreement create only an independent license relationship. Licensee shall complete the services agreed upon with Licensor according to its own means and methods, which shall be in the exclusive control of Licensee and which shall not be subject to the control or supervision of Licensor. The parties agree that this Agreement does not entitle Licensee or its employees or agents (if any) to workers' compensation benefits, unemployment compensation benefits, or any other benefits or protections that accrue from an employment relationship, all of which shall remain the sole and exclusive responsibility of Licensee and/or its employees or agents.
   b. Licensee is not required to perform its services exclusively for the Licensor. Licensee, its employees or agents shall be responsible for any business registrations or licenses required by any governmental entity. Licensor shall not control, directly or indirectly, the number of hours Licensee, its employees or agents shall perform services under this Agreement. Licensor shall not combine business operations with Licensee.
   c. Neither Licensee nor its employees or agents are to be considered agents or employees of Licensor for any purpose, including that of federal and state taxation, and neither Licensee nor its employees or agents are entitled to any of the benefits that the County may provide to its employees. It is understood and agreed that Licensor does not require Licensee to provide services exclusively to Licensor and that Licensor is free to contract to provide services to other entities during the term of this Agreement.

6.8 Entire Agreement: This instrument embodies the whole Agreement of the parties and supersedes any and all other agreements or understandings. No failure of Licensor to exercise any power given it hereunder, or to insist upon strict

compliance by Licensee of any obligation hereunder, and no custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of Licensor's right to demand strict compliance with the terms hereof.

**6.9 Duplicate Originals:** This Agreement may be executed in several counterparts each of which shall be deemed an original.

**6.10 Modification:** There shall be no modification of this Agreement, except in writing, executed with the same formalities as this License Agreement.

**6.11 Severability:** If any provision of this Agreement or application thereof is held invalid, such invalidity will not affect other provisions or application of this Agreement which can be given effect without the invalid provision or application, and to that end, the provisions hereof are declared to be severable.

**6.12 Anti-Boycott Against Israel Act:** Licensee certifies that they are not currently engaged in, and will not for the duration of the contract engage in, a boycott of goods or services from Israel or territories under its control.

**End of Agreement**

IN WITNESS WHEREOF the parties hereto have subscribed their names the date first written above.

**BANNOCK COUNTY COMMISSIONERS**
Licensor                                                                    **LICENSEE**

_____                       _____
Ernie Moser, Chair                                                    Licensee

_____
Terrel N. Tovey, Member

_____
Jeff Hough, Member

## PORTNEUF AMPHITHEATRE EVENT AND SERVICE AGREEMENT

This PORTNEUF AMPHITHEATRE EVENT AND SERVICE AGREEMENT ("Agreement") is entered into on this __16th__ day of ~~January~~ February, 2021 by and between Portneuf Health Trust Amphitheatre (hereinafter referred as to "Owner") and GoOutLocal.Com, Inc. (hereinafter referred to as "Promoter"). The Owner and Promoter shall be referred to collectively as "Parties."

WHEREAS, the Promoter is a marketing company who wants to promote and provide a summer live musical concert series at the Portneuf Amphitheatre commencing in 2021.

WHEREAS, the Owner owns the Bannock County Event Center where the Portneuf Amphitheatre is situated, along with several other event centers and fields.

WHEREAS, the Parties understand and agree that the summer live musical concert series will provide an economic boost to the County, community and surrounding areas.

WHEREAS, the Parties desire to move forward with the summer live musical concert series in 2021 in accordance with the terms, conditions and obligations set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises, terms, obligations and undertakings set forth herein, and other good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, the Parties agree as follows:

1.    Event Location.  All live musical concerts arising from this Agreement shall be performed at the Portneuf Amphitheatre only ("Premises").  All other sections of the Bannock County Event Center are not part of this Agreement.  The Promoter shall have priority and the right to schedule live concert dates between the months of July through September and shall provide Owner a list of preferred dates for each live musical concert by February 15, 2021. Owner shall provide access to Promoter, its staff, merchants, performers and attendees to the Portneuf Amphitheatre.

2.    Concert Performers.  Promoter shall have the exclusive authority, right and discretion in the selection of the live musical concert performers that will be performing in the summer concert series.

3.    Term.  The Parties agree that the term of this Agreement shall be two (2) years commencing in the summer of 2021 and ending in the summer of 2022.  Promoter agrees to present a minimum of six (6) concert events each year during the term of this Agreement.

4.    Ticket & F&B Compensation.  The Promoter agrees to pay for all the musical concert event related expenses.  The Promoter further agrees to pay to Owner a fixed fee per ticket sold and a percentage of net food & beverage sales after Promoter's hard costs and expenses are deducted, based on the size of the event.  The following table breaks down the fixed fee and percentages based on the size of the event:

PORTNEUF AMPHITHEATRE EVENT AND SERVICE AGREEMENT - 1

Scanned with CamScan

EXHIBIT
C

| TICKETS SOLD | TICKET SHARE | NET FOOD & BEVERAGE % |
|---|---|---|
| 0001-2999 | $2.00 PER TICKET SOLD | 10.00% NET SALES |
| 3000-3999 | $2.25 PER TICKET SOLD | 12.50% NET SALES |
| 4000-4999 | $2.50 PER TICKET SOLD | 15.00% NET SALES |
| 5000-5999 | $2.75 PER TICKET SOLD | 17.50% NET SALES |
| 6000-6999 | $3.00 PER TICKET SOLD | 20.00% NET SALES |
| 7000 + | $3.50 PER TICKET SOLD | 25.00% NET SALES |

5.     Accounting/Payment.  The Promoter will provide an accounting, along with payment of total compensation for said event, to Owner within thirty (30) days following the event.  The accounting will provide a breakdown of the revenue generated from ticket sales, F&B sales and sponsorship sales at the event.

6.     Merchandise and Promotion Sales.  The Promoter shall exclusively retain all revenue resulting from merchandise and promotion sales generated at the summer live musical concert series.

7.     Event Staff.  The Promoter shall provide a full event staff, including security, for each concert event.  The Promoter is solely responsible to pay the staff and personnel it hires for each concert event.  All staff and/or personnel not hired by the Promoter is Owner's financial responsibility.

8.     Vendors.  The Promoter understands that Owner may be under existing contractual obligations with certain vendors for events taking place at the Bannock County Event Center.  Owner shall provide the Promoter a copy of all contractual arrangements that may subject the Promoter to comply with said terms and agrees to consult with Promoter before entering into any new contractual relationships.  Owner agrees to refrain from entering into any contractual relationships with any vendors that could interfere with the Promoter's vendors retained exclusively for the summer live concert series contemplated by this Agreement.

9.     Suites.  The Portneuf Amphitheatre possesses reserved Suites that are sold annually for events performing at the Premises.  Owner agrees to provide Promoter access to a minimum of four (4) suites for event sponsors for each live concert performance presented by Promoter.  Owner shall notify and require all existing suite purchasers that desire to attend a live musical concert event presented by Promoter must purchase a ticket from Promoter.

10.     Liability Insurance.  The Promoter shall purchase, obtain and maintain during the Term of this Agreement, a policy of commercial general liability insurance, in an amount of not less than $500,000.00 per occurrence and $1,000,000 in the aggregate for bodily injury and property damage combined.  The policy shall insure Promoter with Portneuf Amphitheatre as an additional insured and shall also insure against liability arising out of the use, occupancy or maintenance of the Premises.

11.     Maintenance.  The Promotor, through its staff and personnel, shall be responsible for setting up all equipment, vendor stands, marketing and advertising materials and staging for

PORTNEUF AMPHITHEATRE EVENT AND SERVICE AGREEMENT - 2

Scanned with CamScanner

the live music concert to be performed. At the end of each concert, the Promoter, through its staff and personnel shall take down all equipment, vendor stands, marketing and advertising materials. In addition, the Promoter shall perform all clean up of trash and debris at the site after each event.

12.    Confidentiality. The Parties hereto agree that they shall keep the terms of this Agreement confidential, except that the parties hereto shall be entitled to disclose the content hereof to their respective attorneys, accountants, financial advisors, and lenders.

13.    Entire Agreement. The Parties declare that this Agreement contains the entire understanding between them and supersedes all pre-existing or contemporaneous agreements or understandings, oral or written, respecting the subject matter hereof.

14.    Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Idaho in all respects, including matters of construction, enforcement and performance, without regard to principles of conflicts of laws. The Parties agree that the venue of any action to enforce this Agreement shall be Ada County, Idaho.

15.    Attorneys' Fees and Costs. Should it be necessary for any party to this Agreement to initiate or defend any legal proceedings wherein any issues arising under the Agreement are adjudicated, the party to such legal proceedings who substantially prevails shall be entitled to reimbursement of their attorney fees, costs, expenses and disbursements, (including the fees and expenses of expert and fact witnesses) reasonably incurred or made by the substantially prevailing party in preparing to bring suit, during suit, on appeal, on petition for review and in enforcing any judgment or award from the party who did not substantially prevail.

17.    Modification. This Agreement can only be changed, amended or modified, in writing, signed and executed by both parties.

18.    Counterparts. This Agreement may be executed in two or more counterparts, transmitted by email, facsimile or otherwise, each of which shall be deemed an original, and all of which together shall constitute a single instrument.

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed by them the day and year first above written.

GOOUTLOCAL.COM, INC.                PORTNEUF HEALTH TRUST AMPHITHEATRE

Jonathan Segali                     Ernie Moser
Its: CEO                            Its:  Chair of the Board of Commissioners

PORTNEUF AMPHITHEATRE EVENT AND SERVICE AGREEMENT - 3

Scanned with CamScanner

STATE OF IDAHO  )
                      ss.
County of Ada    )

On this 22 day of January, in the year 2021, before me, a Notary Public in and for said State, personally appeared JONATHAN SEGALI known to me to be the CEO of GoOutLocal.Com, Inc., and the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of GoOutLocal.Com, Inc.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residence: Old Boise
Commission Expires: 4/30/24

STATE OF IDAHO  )
                      ss.
County of Bannock  )

On this 11th day of February, in the year 2021, before me, a Notary Public in and for said State, personally appeared ERNIE MOSER known to me to be the Chairman of the Board of Commissioners for the Portneuf Health Trust Amphitheatre, and the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of the Portneuf Health Trust Amphitheatre.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

SARA L MORRIS
COMMISSION NO. 61182
NOTARY PUBLIC
STATE OF IDAHO

Notary Public for Idaho
Residence: Arimo
Commission Expires: 2/21/2025

PORTNEUF AMPHITHEATRE EVENT AND SERVICE AGREEMENT - 4

Scanned with CamScanner